**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KEELY ROBERTS, individually and as parent and next friend of C.R. and L.R., and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R., | Lead Case No.        1:22-cv-06169 |
| | Related Case Nos.   1:22-cv-06178 |
| Plaintiffs, | 1:22-cv-06181 |
| | 1:22-cv-06183 |
| v. | 1:22-cv-06171 |
| | 1:22-cv-06185 |
| SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, SMITH & WESSON, INC., BUDSGUNSHOP.COM, LLC, RED DOT ARMS, INC., ROBERT CRIMO, JR., and ROBERT CRIMO, III, | 1:22-cv-06186 |
| | 1:22-cv-06190 |
| | 1:22-cv-06191 |
| Defendants. | 1:22-cv-06193 |
| | 1:22-cv-06359 |
| | 1:22-cv-06361 |
| | |
| | Lead Case Removed from Case No. 22 LA 00000497 in the Circuit Court of Lake County, Illinois |
| | |
| | Hon. Steven C. Seeger |

**SMITH & WESSON'S BRIEF IN OPPOSITION TO**
**PLAINTIFFS' MOTIONS TO REMAND**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 1

ARGUMENT ......................................................................................................... 2

I.   These cases were properly removed under the federal officer removal statute. ...................... 2

   A.  Plaintiffs misstate the broad and liberally construed "acting under" standard. .................. 3

   B.  The conduct relates to the federal directives Smith & Wesson acted under. ...................... 5

   C.  The removal statute is designed to protect federal interests in cases like these. ............... 6

II.  In addition to federal officer removal, the Court has federal question jurisdiction. ................. 6

   A.  Consent of the co-defendants is not required. ................................................... 6

   B.  The Court has federal question jurisdiction under the artful pleading doctrine. ............... 7

   C.  The Court also has federal question jurisdiction under *Grable*. ...................... 11

      1.  The Complaints necessarily raises a federal issue. ..................................... 11

      2.  The federal issue is actually disputed. ................................................. 13

      3.  The federal issue is substantial. ....................................................... 13

      4.  The federal-state balance would not be disrupted. ....................................... 14

   D.  The Court has jurisdiction under the complete preemption doctrine. ............................ 14

III. There is no basis for the Court to award costs or fees. ......................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Abramski v. U.S.*,
    573 U.S. 169 (2014) ........................................................................................... 4

*Agyin v. Razmzan*,
    986 F.3d 168 (2d Cir. 2021) ............................................................................. 4

*Ariz. v. Manypenny*,
    451 U.S. 232 (1981) ........................................................................................... 3

*Avco Corp. v. Machinists*,
    390 U.S. 557 (1968) ......................................................................................... 15

*Baker v. Atl. Richfield Co.*,
    962 F.3d 937 (7th Cir. 2020) ............................................................. 2, 3, 4, 5, 6

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
    25 F.4th 1238 (10th Cir. 2022) ........................................................................ 5

*Bennett v. Sw. Airlines Co.*,
    484 F. 3d 907 (7th Cir. 2015) .......................................................................... 12

*Blanco v. Bath & Body Works, LLC*,
    2022 WL 1908980 (N.D. Ill. June 3, 2022) .................................................... 15

*BP P.L.C. v. Mayor & City Council of Baltimore*,
    141 S. Ct. 1532 (2021) ...................................................................................... 7

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005) ........................................................................... 12

*Bubalo v. Navegar, Inc.*,
    1997 WL 337218 (N.D. Ill. June 13, 1997) .................................................... 10

*Bureau v. BASF Corp.*,
    2022 WL 807372 (M.D. La. Jan. 3, 2022) ....................................................... 7

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386 (1987) ......................................................................................... 15

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ......................................................................................... 12

*Citadel Sec., LLC v. CBOE, Inc.*,
    2017 WL 118419 (N.D. Ill. Jan. 12, 2017) ..................................................... 11

EAST/200140497

*City of Chi. v. Beretta U.S.A. Corp.*,
213 Ill. 2d 351 (2004) .........................................................................8, 9

*Colo. v. Symes*,
286 U.S. 510 (1932)................................................................................6

*In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*,
756 F.3d 917 (6th Cir. 2014) ...............................................................9

*De Bouse v. Bayer*,
235 Ill. 2d 544 (2009) ..........................................................................10

*Elder v. JPMorgan Chase Bank*,
552 F. Supp. 3d 812 (N.D. Ill. 2021) ..................................................11

*Empire Healthchoice Assur., Inc. v. McVeigh*,
547 U.S. 677 (2006)..............................................................................14

*Empress River Casino Corp. v. Local Unions No. 9 & 176*,
1994 WL 262075 (N.D. Ill. 1994) .......................................................13

*Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*,
2022 WL 4597526 (D. Mass. Sept. 30, 2022) .................................6, 10

*Evergreen Sq. of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*,
776 F.3d 463 (7th Cir. 2015) ...............................................................11

*Gen. Auto Serv. Station v. City of Chi.*,
2004 WL 442636 (N.D. Ill. Mar. 9, 2004).............................................7

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)................................................................11, 13, 14

*Gunn v. Minton*,
568 U.S. 251 (2013)..............................................................................11

*Harris v. Rapid Am. Corp.*,
532 F. Supp. 2d 1001 (N.D. Ill. 2007) ..................................................5

*Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*,
756 F.3d 1032 (7th Cir. 2014) ............................................................12

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................................................9

*Huddleston v. U.S.*,
415 U.S. 814 (1974)................................................................................4

iii

*Ill. Pub. Risk Fund v. Purdue Pharma L.P.*,
   2019 WL 3080929 (N.D. Ill. July 15, 2019).................................................................8, 10

*Lippitt v. Raymond James Fin. Servs., Inc.*,
   340 F.3d 1033 (9th Cir. 2003) ............................................................................15

*Merrill v. Navegar, Inc.*,
   26 Cal. 4th 465 (2001) ............................................................................10

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987)............................................................................15

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022)............................................................................10

*N.Y. v. Arm or Ally, LLC*,
   2022 WL 17496413 (S.D.N.Y. Dec. 8, 2022) ...........................................6, 11, 12, 13, 14

*Navistar Int'l Corp. v. Deloitte & Touche, LLP*,
   837 F. Supp. 2d 926 (N.D. Ill. 2011) ............................................................................13

*O'Callaghan v. U.S.*,
   686 F. Supp. 2d 826 (N.D. Ill. 2010) ............................................................................7

*Prince v. Sears Holdings Corp.*,
   848 F.3d 173 (4th Cir. 2017) ............................................................................15

*Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*,
   891 F.3d 256 (7th Cir. 2018) ............................................................................7

*Restoration Risk Retention Grp., Inc. v. Gutierrez*,
   880 F.3d 339 (7th Cir. 2018) ............................................................................8

*Riordan v. Int'l Armament Corp.*,
   132 Ill. App. 3d 642 (1st Dist. 1985) ............................................................................9

*Rodas v. Seidlin*,
   656 F.3d 610 (7th Cir. 2011) ............................................................................3

*Rosciszewki v. Arete Assocs., Inc.*,
   1 F.3d 225 (4th Cir. 1993) ............................................................................15

*Ruppel v. CBS Corp.*,
   701 F.3d 1176 (7th Cir. 2012) ............................................................................3, 5

*Sarauer v. Int'l Ass'n of Machinists*,
   966 F.3d 661 (7th Cir. 2020) ...........................................................................11, 12, 14

iv

*Shapiro v. McManus*,
577 U.S. 39 (2015)..........................................................................8

*Soto v. Bushmaster Firearms Int'l, LLC*,
202 A.3d 262 (Conn. 2019) ....................................................9, 10

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013)........................................................................14

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................................................................8, 10

*Stericycle, Inc. v. Carney*,
2013 WL 3671288 (N.D. Ill. July 12, 2013)................................9

*Tantaros v. Fox News Network, LLC*,
12 F.4th 135 (2d Cir. 2021) ...........................................11, 13, 14

*Tisdale v. Pagourtziz*,
2020 WL 7170491 (S.D. Tex. Dec. 7, 2020)..............................13

*Wagner v. Bank of Am., N.A.*,
2012 WL 6586347 (S.D. Ill. Dec. 17, 2012)................................7

*Walton v. Bayer Corp.*,
643 F.3d 994 (7th Cir. 2011) ........................................................8

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007)...................................................................5, 6

*Williams v. Todd Shipyards Corp.*,
1998 WL 526612 (5th Cir. Jul. 21, 1998)....................................5

*Willingham v. Morgan*,
395 U.S. 402 (1969)......................................................................3

*Young v. Bryco Arms*,
213 Ill. 2d 433 (2004) ..................................................................8

**Statutes and Regulations**

Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.........................14, 15

Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903 ......................6

18 U.S.C. § 923................................................................................4

National Firearms Act, 26 U.S.C. § 5801, *et seq.*................1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15

EAST/200140497

26 U.S.C. § 7801 ...........................................................................................................4

26 U.S.C. § 7805 ...........................................................................................................4

28 U.S.C. § 1441 ........................................................................................................6, 7

28 U.S.C. § 1442 .....................................................................................................1, 3, 7

28 U.S.C. § 1446 ...........................................................................................................7

27 C.F.R. §§ 478.123-478.125 ......................................................................................4

27 C.F.R. § 479.102 ......................................................................................................4

28 C.F.R. § 0.130 ..........................................................................................................4

Plaintiffs' claims against Smith & Wesson cannot proceed without a judicial determination that Smith & Wesson's manufacture and sale of the M&P 15 violated the National Firearms Act ("NFA"). These claims are not merely "evidence of liability" or an "alternative theory of relief," but rather represent a federal issue which is the *only* way Plaintiffs can move forward against Smith & Wesson. This federal law claim is the purpose of the complaint against Smith & Wesson, as Plaintiffs' counsel have publicly proclaimed that the purpose of this case is to "stop" the "sale" of "assault rifles" like the M&P rifle. (Ex. 1.) When stripped of the facially insubstantial, implausible, or foreclosed state-law claims (an exercise federal courts routinely undertake in analyzing jurisdiction), all that remains is an attempt to have a state court overturn the ATF's determination that the M&P 15 is not a "machinegun" under the NFA.

Courts recognize federal jurisdiction under these circumstances under the artful pleading, *Grable*, and complete preemption doctrines to foreclose such attempts. Federal officer removal, 28 U.S.C. § 1442, provides an independent basis for jurisdiction. Smith & Wesson is being sued based on conduct pursuant to a "partnership" (in the words of the ATF) between the ATF and firearms manufacturers. This separately warrants federal jurisdiction.[1]

## BACKGROUND

Plaintiffs concede that the claims against Smith & Wesson arise from a wholly distinct set of facts from the other defendants, specifically, Smith & Wesson's advertising. (Roberts Mot. 3; Turnipseed Mot. 1, 6-7.) But as explained below, Plaintiffs do not allege that Crimo saw the advertisements, let alone was influenced by them. Plaintiffs also fail to plead causation, alleging multiple intervening acts (including criminal acts) by parties outside Smith & Wesson's control.

---

[1] The complaints and motions to remand in Case Nos. 22-cv-6359 and 22-cv-6361 are referred to as "Turnipseed," while those in the other consolidated cases are referred to as "Roberts." Where there are no material differences Smith & Wesson refers generally to "Plaintiffs." The Notices of Removal are abbreviated as "Not." with paragraph references to the Roberts Notice of Removal.

These failures preclude all state-law claims alleged against Smith & Wesson.

The only way Plaintiffs' claims may potentially proceed is through a ruling that Smith & Wesson illegally distributed an NFA weapon (a "machinegun") and violated NFA regulations, including identification, taxation, and registration requirements. (Roberts ¶¶ 52, 168, 174, 189-191, 212-214, 238-241, 321, 330; Turnipseed ¶¶ 87-89, 174-175, 184-187.) Underscoring its centrality to the Complaints, references to the NFA, "machineguns," "assault rifles," "weapons of war," or NFA weapons (all functionally equivalent terms) appear throughout. (Roberts ¶¶ 3, 5-11, 15-18, 23, 29, 38-39, 40-59, 65, 69, 77-78, 81, 90, 93-95, 97, 106, 132-33, 144, 161-63, 168-69, 174, 182, 187, 189-91, 209, 212-15, 227-29, 234, 238-41, 262-64, 270, 305, 312, 320-21, 329-30; Turnipseed ¶¶ 26-34, 38, 84, 86-89, 92-94, 98, 108, 114, 174-75, 184-87, 200-06.) Plaintiffs allege that "if Smith & Wesson had complied with the . . . the NFA, the Shooter would not have been able to access the weapon." (Roberts ¶¶ 168, 189, 212-14, 241; Turnipseed ¶¶ 174, 186-87.)

### ARGUMENT

**I.     These cases were properly removed under the federal officer removal statute.**

Plaintiffs claim that there can be no federal officer jurisdiction because their case is about "marketing" not done at federal behest, and because Smith & Wesson's actions under the ATF "have *nothing to do* with the misconduct alleged in the Complaint." (Roberts Mot. 5.) But this contradicts Plaintiffs own allegations and ignores contrary controlling precedent that Smith & Wesson need *not* show "that the complained-of conduct *itself* was at the behest of a federal agency." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (emphasis original). Rather, "[i]t is sufficient . . . that the allegations are directed at the relationship between the [company] and the federal government." *Id.* at 944-45. That is what Plaintiffs allege here.

Plaintiffs' allegations that Smith & Wesson marketed the M&P rifle without identifying, taxing, or registering it as an NFA "machinegun" are essential, unavoidable issues. (Roberts ¶¶ 52,

168, 174, 190; Turnipseed ¶¶ 174-75, 184-86.)  Each of those acts were non-discretionary and performed by Smith & Wesson acting on behalf of, and under the direction of, the ATF.  The reciprocal relationship underlying the federal firearms scheme is so closely integrated that Plaintiffs' counsel has accused the ATF of "working for" the "gun industry."  (Ex. 2.)[2]

Plaintiffs cannot credibly contend that Smith & Wesson does not implement ATF policy.  The claims against Smith & Wesson are rooted in the ATF's administrative judgment that M&P rifles are ***not*** "machineguns."  Moreover, federal officer jurisdiction, as an exception to the well-pleaded complaint rule, looks principally to the defenses that will be raised so that "federal officers' defenses to state-law actions [are] litigated in federal courts."  *Rodas v. Seidlin*, 656 F.3d 610, 617 (7th Cir. 2011).  And "removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case."  *Baker*, 962 F.3d at 945 (internal quotation omitted).  This case will turn on the propriety of the actions of the ATF – Smith & Wesson's federal superior – with respect to classifying M&P rifles under the NFA. Congress intended such federal agency issues to be adjudicated in a federal forum.  *Rodas*, 656 F.3d at 617; *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

### A.  Plaintiffs misstate the broad and liberally construed "acting under" standard.

Plaintiffs' next argument, that Smith & Wesson fails to show that it was "acting under" the federal government, distorts the removal statute beyond recognition.  (Mots. 4-5.)  Plaintiffs' attempt to impose a restrictive analysis ignores that, unlike other removal statutes, federal officer jurisdiction must be "liberally construe[d]."  *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012).  The "policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."  *Ariz. v. Manypenny*, 451 U.S. 232, 242 (1981).  The courts "must credit the

---

[2] Giffords, essentially a sister organization to Everytown and Brady, has similarly declared that the ATF is a "captured agency," obviously in response to and objecting to the extent of the partnership. (Ex. 3.)

defendants' theory of the case when evaluating the relationship between the defendants' actions and the federal officer." *Agyin v. Razman*, 986 F.3d 168, 175 (2d Cir. 2021).

Plaintiffs compound their error by ignoring the unique, symbiotic manufacturer-ATF partnership created by the federal firearms laws, leading Plaintiffs' counsel to characterize the ATF as "working for" the gun industry. The complained-of acts (NFA identification, taxation, registration) were directed by Congress and the ATF as part of this federal firearms "partnership" (in the ATF's words), which Congress created to help balance firearms regulation with protection of the Second Amendment. *See Huddleston v. U.S.*, 415 U.S. 814, 824 (1974) (describing Congress's decision that "[c]ommerce in firearms [be] channeled through federally licensed . . . manufacturers"); *Abramski v. U.S.*, 573 U.S. 169, 186, 190 (2014) (licensed dealers are "principal agent[s] of federal enforcement"); *Open Letter to All Federal Firearms Licensees*, U.S. DOJ (Jan. 14, 2004) (Ex. 4). Certain government functions are delegated to manufacturers (e.g., tracing crime guns, collecting certain taxes, and maintaining registration and transfer records), while others are performed by the ATF. *See* 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. §§ 478.123-478.125. One ATF responsibility is to determine whether firearms are "machine guns" under the NFA. *See* 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 27 C.F.R. § 479.102; 28 C.F.R. § 0.130(a)(1)-(2). The ATF's determination that M&P-style rifles were ***not*** NFA "machineguns" triggered Smith & Wesson's duties regarding taxation, registration, and identification. (*See* Ex. 5 at 5; Ex. 6.) The acts that Plaintiffs complain of were mandatory, performed on behalf of the ATF, and would have been performed by the ATF itself had they not been delegated.[3]

---

[3] Turnipseed tries to distinguish *Baker* because it involved a government contractor (Mot. 4), but the Seventh Circuit found the "acting under" element satisfied in part because "the government directed ***nearly*** every aspect of [the at-issue] production process . . . ." *Baker*, 962 F.3d at 940. Here, ATF's control over the relevant conduct went even further – directing ***every*** aspect of the at-issue NFA conduct. And as in *Baker*, Smith & Wesson's NFA conduct served a federal objective (federal firearms policy). *Id.* at 942.

Furthermore, the at-issue acts were performed to advance distinctly federal objectives embodied in the federal firearms partnership, including treating "machineguns" as a specific class of weapons under the NFA and taking (or refraining from) acts necessary to give force and effect to the ATF's determinations about which weapons qualify. This distinguishes the case at bar from cases in which courts have found private companies to be merely regulated because the defendant was serving a private objective, such as complying with a commercial lease for the purpose of extracting fossil fuels for private sale. *See Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1253 (10th Cir. 2022).

The relationship between Smith & Wesson and the ATF is precisely the "special relationship" identified by the courts that serves federal objectives in a manner closely directed by a federal agency. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153-54, 157 (2007); *Ruppel*, 701 F.3d at 1181; *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1005 (N.D. Ill. 2007). Where this special relationship exists, it is sufficient if the defendant acted "pursuant to federal direction." *Williams v. Todd Shipyards Corp.*, 1998 WL 526612, at *4 (5th Cir. Jul. 21, 1998). The critical factor is that the direction is aimed at achieving a federal objective, rather than regulation of a private pursuit. *Watson*, 551 U.S. at 153-54. Accordingly, the "acting under" standard is satisfied.[4]

**B. The conduct relates to the federal directives Smith & Wesson acted under.**

Plaintiffs claim Smith & Wesson's acts at the behest of the ATF (NFA identification, taxation, registration) are unfair and deceptive. (Roberts ¶¶ 52, 168, 174, 190; Turnipseed ¶¶ 174-75, 184-86.) Even if that were not the case, "it is sufficient that the allegations are simply directed at the relationship between the [company] and the federal government." *Baker*, 962 F.3d at 944–45. Plaintiffs' arguments belie the reality that marketing firearms, particularly with respect to NFA

---

[4] Contrary to Plaintiffs' argument, a private corporation can be a "person" entitled to federal officer removal. *Baker*, 962 F.3d at 942; *Ruppel*, 701 F.3d at 1181.

status, is intertwined with the ATF's judgments about those firearms. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, 2022 WL 4597526, at *21 (D. Mass. Sept. 30, 2022). Plaintiffs cannot separate the lawful attributes of a firearm from the marketing of those attributes. *Id.*[5]

### C. The removal statute is designed to protect federal interests in cases like these.

Plaintiffs err in asserting that denying remand here would make "private gun manufacturers (or myriad other federally regulated entities) effectively . . . immune to suit in state court." (Roberts Mot. 4.) But immunity is not the issue here, only whether this Court has jurisdiction. The novelty and sweep of Plaintiffs' NFA allegations make this an extraordinary case. Plaintiffs' argument that Smith & Wesson cites no federal officer removal case based on the ATF-manufacturer partnership simply reveals the disingenuousness of Plaintiffs' arguments. No prior plaintiff has tried to use state statutes and state courts to circumvent the PLCAA and the ATF's authority under the NFA using a "false firearms marketing" strategy.

Congress passed the removal statute to safeguard those acting under federal direction from the perils of "opposing policy on the part of those exerting or controlling state power," particularly state courts. *Colo. v. Symes*, 286 U.S. 510, 517 (1932); *Watson*, 551 U.S. at 150; *cf. N.Y. v. Arm or Ally, LLC*, 2022 WL 17496413, at *6 (S.D.N.Y. Dec. 8, 2022). That is happening here; a surreptitious attack on policy.

## II. In addition to federal officer removal, the Court has federal question jurisdiction.

### A. Consent of the co-defendants is not required.

Plaintiffs err in asserting that removal is "defective" because not all defendants consented. (Roberts Mot. 7.) First, because the case was not "solely removed under section 1441(a)," but also

---

[5] Plaintiffs do not dispute the final element necessary to establish federal officer removal – that Smith & Wesson has (at least) colorable federal defenses. *Baker*, 962 F. 3d at 945-46. (Not. 25.) The at-issue acts were dictated by ATF directives, and the claims are barred by, *inter alia*, the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901–7903 ("PLCAA"), and the Supremacy Clause.

under Section 1442,[6] the consent requirement of Section 1446(b)(2)(A) was not triggered. *Bureau v. BASF Corp.*, 2022 WL 807372, at *11-12 (M.D. La. Jan. 3, 2022) (citing *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021)).

Second, Section 1441(c) only requires federal-claim defendants to consent. Consent is not required from defendants in state claims over which the court lacks supplemental jurisdiction.[7] Supplemental jurisdiction is lacking where the "operative facts" differ, even if the claims have "some things in common." *Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258-59 (7th Cir. 2018). The Court lacks supplemental jurisdiction here because the only thing the claims share is that they concern Crimo. *See id.* But the alleged unlawful acts by Crimo and the other defendants are completely distinct from the claims against Smith & Wesson, which are purportedly based solely on marketing, including marketing the M&P rifle without identifying it as a purported NFA weapon. (Roberts Mot. 3, 9, 13-14; Roberts ¶¶ 52, 160-72, 174, 190-97, 212-24, 238-41.) If Smith & Wesson were not a party, the claims against the other defendants would be "unaffected." *Gen. Auto Serv. Station v. City of Chi.*, 2004 WL 442636, at *12 (N.D. Ill. Mar. 9, 2004); *Wagner v. Bank of Am., N.A.*, 2012 WL 6586347, at *2-3 (S.D. Ill. Dec. 17, 2012).[8]

## B. The Court has federal question jurisdiction under the artful pleading doctrine.

Plaintiffs admit that the artful pleading doctrine applies where, as here, a plaintiff "'disguised' federal claims as state law claims." (Robert Mot. 10.) But they err in then claiming that a federal court may not evaluate the merits of state-law claims when evaluating jurisdiction. (*Id.*; Turnipseed Mot. 6.) Federal courts not only *can* do so, they *must* evaluate the merits of claims

---

[6] Consent is not required under § 1442. *O'Callaghan v. U.S.*, 686 F. Supp. 2d 826, 828 (N.D. Ill. 2010).

[7] The Court also must sever and remand the claims against the other defendants. 28 U.S.C. § 1441(c)(2).

[8] Plaintiffs argue that Smith & Wesson conceded that the claims share "common questions of law and fact" when it moved to consolidate the cases. (Roberts Mot. 7.) Not so. That the complaints share common questions of law and fact *with each other* does not mean that the *claims within those complaints* do.

when determining whether a plaintiff has attempted to artfully plead to affect federal jurisdiction. Courts routinely perform such analyses, for example, in the context of fraudulent joinder. *See Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). When a plaintiff attempts to plead a federal claim to establish jurisdiction over related state-law claims, the court must consider whether the federal claim is insubstantial, implausible, or foreclosed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). Where, as here, a defendant removes a case based on federal question jurisdiction, the same *Steel Co.* standard governs whether artfully pleaded state-law claims can be disregarded. *See Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019).[9]

Tellingly, Plaintiffs virtually ignore the cited authority demonstrating that the state-law claims are foreclosed, implausible, and insubstantial under Illinois law. (Not. ¶¶ 29-32.) Causation is an essential element of each claim, but the Illinois Supreme Court foreclosed causation against firearm manufacturers where "the claimed harm is the aggregate result of numerous unforeseeable intervening criminal acts by third parties not under defendants' control." *Young v. Bryco Arms*, 213 Ill. 2d 433, 446-56 (2004); *City of Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 394-414 (2004). Here, Plaintiffs allege multiple intervening acts by other defendants (including Crimo's Father procuring the FOID card, the Gun Shop Defendants selling and transferring the firearm in alleged violation of the municipal code, and Crimo's shooting). (Roberts ¶¶ 16-17, 253-59, 261-64, 272-81, 286-99, 305-07; Turnipseed ¶¶ 3, 7, 19-20, 150, 198.) Plaintiffs superficially distinguish *Young* and *Beretta* as public nuisance cases (Turnipseed Mot. 6), but the holding that intervening acts negate the necessary element of causation did not turn on

---

[9] *Purdue* considered only whether the claims were "wholly insubstantial or frivolous," citing *Shapiro*. The standard applied by the Supreme Court and Seventh Circuit is broader than the one applied in *Purdue*, as seen in *Steel Co.* (cited approvingly in *Shapiro*) and, *e.g.*, *Restoration Risk Retention Grp., Inc. v. Gutierrez*, 880 F.3d 339, 347 (7th Cir. 2018) (citing *Steel Co.* and similar Seventh Circuit precedent).

8

the type of claim. *Young*, 213 Ill. 2d at 446-56; *Beretta*, 213 Ill. 2d at 394-414. In any event, *Beretta* and *Riordan* rejected negligence claims as well as public nuisance claims. *Id.* at 390-94; *Riordan v. Int'l Armament Corp.*, 132 Ill. App. 3d 642, 647 (1st Dist. 1985).

Plaintiffs also neglect even to address the absence of duty. Negligence-based claims against firearms manufacturers are foreclosed because manufacturers "owe no duty . . . to prevent their firearms from 'ending up in the hands of persons who use and possess them illegally.'" *Beretta*, 213 Ill. 2d at 390-94; *Riordan*, 132 Ill. App. 3d at 647.

Plaintiffs argue that it can be "reasonably inferred" from the Complaints that Crimo saw the ads. (Turnipseed Mot. 7.) But the Complaints plead only that "on information and belief" Crimo likely was "exposed to", "enticed by", "influenced by", or "induced and encouraged by" certain ads. (Roberts ¶¶ 130-31, 145, 237; Turnipseed ¶¶ 135-138.) They do not allege a single fact on which such a belief could be based. Nowhere does the complaint include necessary facts such as when or where the ads were distributed, let alone how Crimo would have ever seen them.

Plaintiffs' position is that merely because the ads existed at some point in time, Crimo *must have been* influenced by them. But the court need only give credence to "facts" properly pled. *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020). "The court is not required to credit rank speculation." *Id.* "Although *Iqbal* and *Twombly* do not prohibit pleading on information and belief, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Stericycle, Inc. v. Carney*, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013) (cleaned up). Plaintiffs' use of "information and belief" without a single factual allegation supporting such belief is inadequate.

Plaintiffs attempt to avoid this failing with a misplaced reliance on *Soto v. Bushmaster*

*Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019). (Roberts Mot. 11.) First, Illinois law does not permit a consumer fraud claim based on a "market theory" of causation where the plaintiff did not "receive, directly or indirectly," advertising from the defendant. *De Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009). Second, *Soto* repeatedly stressed that a plaintiff must plead that the shooter saw the ads. *Soto*, 202 A.3d at 290-91 ("viewers"), 296 ("ever had seen"); 324 ("watched those advertisements"). *Soto* also distinguished two cases rejecting similar claims because the shooter was not alleged to have seen the ads. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 471, 473, 488-91 (2001); *Bubalo v. Navegar, Inc.*, 1997 WL 337218, at *2, 8-9 (N.D. Ill. June 13, 1997).[10]

Plaintiffs assert that *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), is irrelevant because it left open the possibility of restrictions. (Turnipseed Mot. 13.) But the right of Americans to own AR-type rifles, which are in "common use," is "presumptively protected" by the Second Amendment. *Bruen*, 142 S. Ct. at 2130. Plaintiffs do not even attempt to show that asking a state court to ban all AR-type firearms (by ruling that they are illegal NFA firearms) is consistent with the "historical tradition of firearm regulation." *Id.*

This Court must cast aside Plaintiffs' insubstantial, implausible, or foreclosed state-law claims. *Steel Co.*, 523 U.S. at 89; *Purdue Pharma*, 2019 WL 3080929, at *2. All that is left is strict liability conditioned on a finding that Smith & Wesson violated the NFA by selling an illegal "machinegun" or the ATF misclassified the M&P rifle. But any state court finding would overturn the carefully crafted firearms classification scheme, making felons of millions of law-abiding Americans. The artful pleading doctrine confers jurisdiction under precisely these circumstances.

---

[10] Further, as in *Estados Unidos Mexicanos*, 2022 WL 4597526, the alleged "violation by Smith & Wesson is that the firearm functions exactly as it is advertised to," which is not deceptive as a matter of law. *Id.* at *21; *Bubalo*, 1997 WL 337218, at *9. For example, Plaintiffs contend that the advertisements misleadingly suggest the M&P rifle is used and endorsed by the military (Roberts Mot. 3; Turnipseed Mot. 17) but also insist it is a "weapon of war" designed for and used by the military. (Roberts ¶¶ 42, 43, 51, 161, 162, 229; Turnipseed ¶¶ 26-34.)

## C. The Court also has federal question jurisdiction under *Grable*.

*Grable* jurisdiction rests on the "commonsense notion" that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Sarauer v. Int'l Ass'n of Machinists*, 966 F.3d 661, 673 (7th Cir. 2020). The elements of *Grable* jurisdiction are an "embedded federal issue" that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* at 673 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).[11]

The Southern District of New York recently exercised *Grable* jurisdiction in a strikingly similar lawsuit, holding that "to resolve the State's claims, the Court must decide whether the products at issue are 'firearms' or 'component parts' thereof within the meaning of federal law, which is 'an important issue of federal law that sensibly belongs in a federal court.'" *Arm or Ally*, 2022 WL 17496413, at *9 (quoting *Grable*, 545 U.S. at 315). The court found the issue "substantial" because of the "sweeping consequences" for the federal regulatory scheme and the potential liability for thousands of individuals, *id.* at *6, and no disruption to the state-federal balance existed because of the "strong federal interest" in "the regulation of firearms generally" and the meaning of federal statutory definitions, *id.* at *8. The same reasoning applies here.

### 1. The Complaints necessarily raises a federal issue.

Because the state court must adjudicate the meaning and application of the NFA to resolve Plaintiffs' claims, a federal issue has been necessarily raised. The federal issue satisfies the first *Grable* factor because state courts are "not entitled to give an independent answer to this question,

---

[11] Numerous courts have recently exercised or affirmed *Grable* jurisdiction. *See Evergreen Sq. of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015); *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 140 (2d Cir. 2021); *Elder v. JPMorgan Chase Bank*, 552 F. Supp. 3d 812, 816 (N.D. Ill. 2021); *Citadel Sec., LLC v. CBOE, Inc.*, 2017 WL 118419, at *4 (N.D. Ill. Jan. 12, 2017).

different from federal law." *Sarauer*, 966 F.3d at 673; *see Arm or Ally*, 2022 WL 17496413, at *5-6. The state court must decide this federal issue if the cases are remanded. It is "inescapable." *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014).

Plaintiffs argue that the NFA issue is an unimportant add-on or mere alternative "theory" of recovery. (Roberts Mot. 8-9.) But the court can consider "logically separate" state and federal claims even when pleaded in a single count. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194-5 (2d Cir. 2005). Plaintiffs here package distinct claims into one count. One is based on purported misrepresentations. (Roberts Mot. 3 (citing Roberts ¶¶ 182-189, 204-211); Turnipseed ¶ 68.) The other is based on an alleged omission: failing to disclose that the M&P rifle is allegedly an NFA "machinegun." (Roberts ¶¶ 168, 189, 212, 241; Turnipseed ¶¶ 174-176, 187.) The latter plainly requires a determination of federal law, specifically whether the M&P rifle is a "machinegun."

Plaintiffs transparently seek an order requiring Smith & Wesson to disclose that the M&P rifle is an NFA weapon. (Roberts at 53, ¶¶ 212-13, 224; Turnipseed at 53, ¶¶ 174, 186.) The only way Plaintiffs can obtain such relief is a ruling that the M&P rifle is an NFA weapon. That further shows that the NFA allegations are a separate claim and not a mere alternative "theory." *See Broder*, 418 F.3d at 195 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)). Plaintiffs' counsel has made clear that these separate federal claims are central to the complaint, by which Plaintiffs seek to eliminate the "sale" of weapons such as the M&P rifle. As in *Broder*, Plaintiffs' claims necessarily implicate a "complex federal regulatory scheme": the manufacture, classification, distribution, taxing, and sale of firearms. *Id.*

Plaintiffs rely on cases involving claims where the federal issue was merely relevant to an element of an independent state law claim. In *Hartland*, the removing party claimed only that a federal law issue was "material to" (not essential to) the state-law claims. *Id.* at 1032-34. *Bennett*

*v. Sw. Airlines Co.*, 484 F. 3d 907, 910-11 (7th Cir. 2015), involved the application of a standard of care that came from federal law. *Navistar Int'l Corp. v. Deloitte & Touche, LLP*, 837 F. Supp. 2d 926, 930 (N.D. Ill. 2011), involved allegations that the defendant violated federal standards, not a "a clearly identified federal . . . standard subject to a live dispute."[12] This case is far different because the NFA issue is at the center of Plaintiffs' theory of liability. Plaintiffs fail to cite a *single* case involving a claim, as those at issue here, requiring a state court to interpret and potentially vitiate federal law and a concomitant regulatory scheme.

### 2. The federal issue is actually disputed.

Plaintiffs' core claim that Smith & Wesson violated the NFA is "actually disputed." *Grable*, 545 U.S. at 314; *Arm or Ally*, 2022 WL 17496413, at *7-8. Plaintiffs incorrectly argue that a nearly pure issue of law is necessary to demonstrate an actual dispute. (Roberts Mot. 11.) The authorities cited give no support for that proposition.

### 3. The federal issue is substantial.

*Arm or Ally* found that "properly defining the terms 'firearm' and 'component part'" and "determining whether the products at issue" fell within those terms, was "plainly a substantial issue" because of the "sweeping consequences" on federal and state regulatory authority and individual liability. 2022 WL 17496413, at *6. Here as well, Plaintiffs seek to have a state court re-define "machinegun" contrary to federal regulations with sweeping consequences for state and federal regulation that would instantly make illegal the ownership or possession of an M&P rifle (or any AR-type rifle) by law-abiding Americans. And the question of what is or is not an NFA firearm presents a nearly pure issue of law, further supporting the substantiality element. *Tantaros*,

---

[12] Further, *Empress River Casino Corp. v. Local Unions No. 9 & 176*, 1994 WL 262075 (N.D. Ill. 1994) (Roberts Mot. 11), addressed preemption, not *Grable,* and a disputed federal issue was recognized in *Tisdale v. Pagourtziz*, 2020 WL 7170491, at *5 (S.D. Tex. Dec. 7, 2020) (Roberts Mot. 9).

EAST/200140497

12 F. 4th at 145 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)).[13]

### 4. The federal-state balance would not be disrupted.

The exercise of federal jurisdiction to resolve whether the M&P rifle is a "machinegun" and whether Smith & Wesson violated the NFA "would be consistent with, and not disruptive to, the 'congressionally approved balance of federal and state judicial responsibilities.'" *Arm or Ally*, 2022 WL 17496413, *8 (citing *Grable*, 545 U.S. at 314). Removal would not "displace state law or preclude state remedies; it leaves intact the states' legitimate" interests. *Sarauer*, 966 F.3d at 674-75.[14] Because interpretation of the NFA will "rare[ly]" arise state court actions, federal jurisdiction here will only have a "microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315. Indeed, a *remand* would disrupt the appropriate balance by allowing a state court to resolve a federal question that implicates a substantial federal interest and potentially upend a federal regulatory scheme. *Tantaros*, 12 F.4th at 146. As in *Arm or Ally*, "there is a strong federal interest in the issues presented in this case – namely, the regulation of firearms generally and whether the products at issue qualify" under the federal definitions. 2022 WL 17496413, *8.[15]

### D. The Court has jurisdiction under the complete preemption doctrine.

Plaintiffs err in arguing that complete preemption does not apply because of the supposed absence of a private right of action. The NFA provides an *administrative* right to challenge the ATF's determination that the M&P rifle is not a machinegun, and the Administrative Procedure Act ("APA"), provides a *statutory* right of judicial review. 5 U.S.C. § 701, *et seq.* Properly read

---

[13] Plaintiffs assert that the purported absence of a private right of action makes the issue insubstantial. (Roberts Mot. 12.) But there *is* a private right of action (Not. ¶¶ 44-45), and the Supreme Court has rejected Plaintiffs' premise, holding that "the absence of a private right of action" is "not dispositive" of "congressional intent." *Grable*, 545 U.S. at 317; *see Arm or Ally,* 2022 WL 17496413, at *6.

[14] State courts would remain free to consider claims of actual consumers deceived into purchasing products by deceptive advertising that they saw, and to consider unrelated state law claims against other defendants.

[15] In the related area of abstention, federal courts have a "virtually unflagging" "obligation" not to defer to state courts if the federal court has jurisdiction. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013).

together, they are completely preemptive because they supply a private right action and the exclusive vehicle to litigate the appropriate classification of firearms under federal law. (Not. ¶¶ 44-45.) The absence of money damages is immaterial. Complete preemption turns on the "nature of the claim", not the form of relief available. *Rosciszewki v. Arete Assocs., Inc.*, 1 F.3d 225, 230 (4th Cir. 1993); *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 178 (4th Cir. 2017). Caselaw "squarely contradict[s]" the view that complete preemption requires certain relief. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 n.4 (1987). "The breadth or narrowness of the relief which may be granted under federal law . . . is a distinct question from whether the court has jurisdiction." *Id.* (quoting *Avco Corp. v. Machinists*, 390 U.S. 557, 561 (1968)); *see Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003).

Plaintiffs' claims rely upon alleged NFA violations, including that the M&P rifle is an illegal "machinegun"; that Smith & Wesson deceptively failed to identify it as an "NFA weapon"; and that Smith & Wesson failed to comply with NFA requirements that apply only if M&P rifles are "machineguns" under the NFA. Their claims are completely preempted by a combination of the federal regulatory regime governing NFA firearms and the judicial review provisions of the APA. Congress and the ATF have created an exclusive federal framework through which the ATF's classification of M&P rifles under the NFA can be challenged. (Not. at ¶¶ 14, 35, 42-45.) Congress has "clearly manifested an intent" to filter such challenges to federal court and displace state law claims that challenge the proper classification of firearms under the NFA. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

## III.     There is no basis for the Court to award costs or fees.

Attorneys' fees and costs are available only where there is no "objectively reasonable basis for removing the case to federal court." *Blanco v. Bath & Body Works, LLC*, 2022 WL 1908980, at *4 (N.D. Ill. June 3, 2022). Smith & Wesson has ample support for removal, as explained above.

Dated: January 20, 2023

Respectfully submitted,

Smith & Wesson Brands, Inc., Smith &
Wesson Sales Company, Smith & Wesson,
Inc., and American Outdoor Brands
Corporation

By: /s/ Kenneth L. Schmetterer

James Vogts
Andrew Lothson
Brett Henne
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
T (312) 222-8517
T (312) 923-8274
T (847) 949-0057
E jvogts@smbtrials.com
E alothson@smbtrials.com
E bhenne@smbtrials.com

Edward S. Scheideman (pro hac vice)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
T 202.799.4534
E edward.scheideman@us.dlapiper.com

Kenneth L. Schmetterer
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
T 312.368.2176
E kenneth.schmetterer@us.dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I electronically filed **Smith & Wesson's Opposition to Motion to Remand** using the court's electronic filing system, which will automatically send notice of filing to all counsel of record. Notice has also been sent to the following counsel of record by electronic mail:

H. Christopher Boehning
Jeffrey J. Recher
Carly Lagrotteria
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3700
cboehning@paulweiss.com
jrecher@paulweiss.com
clagrotteria@paulweiss.com

Alla Lefkowitz
Alison Barnes
**Everytown Law**
P.O. Box # 14780
Washington, DC 20044
(202) 545-3257
alefkowitz@everytown.org
abarnes@everytown.org

Krystan Hitchcock
Laura Keeley
**Everytown Law**
450 Lexington Avenue
New York, New York 10017
(646) 324-8218
khitchcock@everytown.org
lkeeley@everytown.org

Keith L. Hunt
Delaney A. Hunt
**Hunt Law PC**
Bannockburn Atrium
2275 Half Day Road, Suite 126
Bannockburn, Illinois 60015
(312) 558-1300
khunt@huntpclaw.com
dhunt@huntpclaw.com

Jay Edelson
Benjamin H. Richmond
Ari J. Scharg
David I. Mindell
J. Eli Wade-Scott
Amy Hausmann
**Edelson PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
(312) 589-6370
jedelson@edelson.com
brichman@edelson.com
ascharg@edelson.com
dmindell@edelson.com
ewadescott@edelson.com
abhausmann@edelson.com

Erin Davis
Philip Bangle
**Brady Center to Prevent Gun Violence**
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
edavis@bradyunited.org
pbangle@bradyunited.org

Donna J. Vobornik
Brian E. Cohen
**Dentons**
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
(312) 876-7370
donna.vobornik@dentons.com
brian.cohen@dentons.com

*Attorneys for Plaintiffs Turnipseed and Chupack*

Bruce W. Lyon
**LaBarge, Campbell & Lyon, LLC**

Antonio M. Romanucci
Gina A. DeBoni
Robert S. Baizer
David A. Neiman
Michael E. Holden
**Romanucci & Blandin, LLC**
321 North Clark Street, Suite 900
Chicago, Illinois 60654
(312) 458-1000
aromanucci@rblaw.net
gad@rblaw.net
rbaizer@rblaw.net
dneiman@rblaw.net
mholden@rblaw.net

*Attorneys for Plaintiffs Roberts, Bennett, Sundheim, Straus, Sedano, Rodriguez, Tenorio, Vergara, Toledo, and Zeifert*

200 West Jackson Boulevard, Suite 2050
Chicago, Illinois 60606
(312) 580-9013
blyon@lcllaw.com

Christopher Renzulli
Scott C. Allan
**Renzulli Law Firm, LLP**
One North Broadway, Suite 1005
White Plains, New York 10601
(914) 285-0700
crenzulli@renzullilaw.com
sallan@renzullilaw.com

*Attorneys for Defendant Budsgunshop.com, LLC*

Scott L. Braum
**Scott L. Braum & Associates, Ltd.**
812 East Franklin Street, Suite C
Centerville, Ohio 45459
(937) 396-0089
slb@braumlaw.com

*Attorney for Defendant Red Dot Arms, Inc.*

Michael J. Mullen
Kyle S. Blair
**Kralovec & Marquard, Chartered**
55 West Monroe Street, Suite 1000
Chicago, Illinois 60603
(312) 346-6027
mike.mullen@kraloveclaw.com
kyle.blair@kraloveclaw.com

*Attorneys for Defendant Robert Crimo, Jr.*

/s/ Kenneth L. Schmetterer
Kenneth L. Schmetterer