# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEELY ROBERTS, individually and as parent and next friend of C.R. and L.R., and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R.,<br><br>*Plaintiffs,*<br><br>v.<br><br>SMITH & WESSON BRANDS, INC., *et al.,*<br><br>*Defendants.* | Lead Case No. 1:22-cv-06169<br><br>Lead Case Removed from Case No. 22 LA 00000487 in the Circuit Court of Lake County, Illinois<br><br><br>**Hon. Steven C. Seeger** |
| ELIZABETH TURNIPSEED,<br><br>*Plaintiff,*<br><br>v.<br><br>SMITH & WESSON BRANDS, INC., *et al.,*<br><br>*Defendants.* | **Case No. 1:22-cv-6359**<br><br>Removed from Case No. 22 LA 00000497 in the Circuit Court of Lake County, Illinois |
| JOSHUA CHUPACK, individually and as next friend of I.C.,<br><br>*Plaintiffs,*<br><br>v.<br><br>SMITH & WESSON BRANDS, INC., *et al.,*<br><br>*Defendants.* | **Case No. 1:22-cv-6361**<br><br>Removed from Case No. 22 LA 00000532 in the Circuit Court of Lake County, Illinois |

### *TURNIPSEED* AND *CHUPACK* PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO REMAND

## TABLE OF CONTENTS

ARGUMENT IN REPLY ...................................................................................................1

I.  Smith & Wesson Fails to Show Federal Officer Jurisdiction ..........................................2

II. Smith & Wesson Fails to Show Federal Question Jurisdiction .......................................7

    A.  *Plaintiffs' State Law Claims are not Insubstantial, Implausible, or Foreclosed* ............................................................................................7

    B.  *Plaintiffs' Claims Do Not Create Federal Jurisdiction Simply Because They Mention the NFA* ...............................................................10

    C.  *The "Extraordinary" Complete Preemption Doctrine Does Not Apply Here* ....13

III. Conclusion ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Supreme Court Cases**

*Abramski v. U.S.*,
573 U.S. 169 (2014)............................................................................................3

*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*,
390 U.S. 557 (1968)..........................................................................................14

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987)..........................................................................................14

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)..............................................................................11, 12, 13

*Gunn v. Minton*,
568 U.S. 251 (2013)..........................................................................................10

*Huddleston v. U.S.*,
415 U.S. 814 (1974)............................................................................................3

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)..........................................................................................10

*N.Y. State Rifle & Pistol Ass'n, Inc., v. Bruen*,
142 S.Ct. 2111 (2022).......................................................................................10

*Shapiro v. McManus*,
577 U.S. 39 (2015).....................................................................................7, 9, 10

*State of Colorado v. Symes*,
286 U.S. 510 (1932)............................................................................................6

*Watson v. Philip Morris Companies, Inc.*,
551 U.S. 142 (2007)................................................................................ *passim*

**United States Appellate Court Cases**

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) .............................................................................3

*Broder v. Cablevision Sys. Corp.*,
418 F.3d 187 (2d Cir. 2005)..............................................................................11

*Lippitt v. Raymond James Fin. Servs., Inc.*,
    340 F.3d 1033, 1042 (9th Cir. 2003) ...............................................................14

*Prince v. Sears Holdings Corp.*,
    848 F.3d 173 (4th Cir. 2017) ........................................................................14

*Restoration Risk Retention Grp., Inc. v. Gutierrez*,
    880 F.3d 339 (7th Cir. 2018) ..........................................................................7

*Rogers v. Tyson Foods, Inc.*,
    308 F.3d 785 (7th Cir. 2002) ........................................................................14

*Rosciszewski v. Arete Assocs., Inc.*,
    1 F.3d 225 (4th Cir. 1993) .............................................................................14

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
    869 F.3d 568 (7th Cir. 2017) ...........................................................................8

**United States District Court Cases**

*Bubalo v. Navegar, Inc.*,
    No. 96 C 3664, 1997 WL 337218 (N.D. Ill. June 13, 1997) ...............................9

*City of Camden v. Beretta U.S.A. Corp.*,
    81 F. Supp. 2d 541 (D.N.J. 2000) .................................................................14

*Corp. Travel Consultants, Inc. v. United Airlines, Inc.*,
    799 F. Supp. 58 (N.D. Ill. 1992) ...................................................................13

*Corporan v. Wal-Mart Stores East*,
    194 F. Supp. 3d 1128 (D. Kan. 2016) ............................................................12

*DeAngelo v. Artis Senior Living of Elmhurst*, LLC,
    No. 22 C 02538, 2022 WL 3357276 (N.D. Ill. Aug. 15, 2022) ..........................3

*Ill. Pub. Risk Fund v. Purdue Pharma L.P.*,
    No. 19 C 3210, 2019 WL 3080929 (N.D. Ill. July 15, 2019) .......................7, 12

*Jefferson v. ROSSI, S.A.*,
    No. 01-CV-2536, 2002 WL 32154285 (E.D. Pa. Jan. 22, 2002) ......................14

*Mackey v. Tower Hill Rehab., LLC*,
    569 F. Supp. 3d 740 (N.D. Ill. 2021) ........................................................13, 14

*N.Y. v. Arm or Ally, LLC*,
    No. 22-CV-6124 (JMF), 2022 WL 17496413, (S.D.N.Y. Dec. 8, 2022) ...........12

*Stericycle, Inc. v. Carney*,
  No. 12 C 9130, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013) ...................................9

**State Supreme Court Cases**

*City of Chicago v. Beretta*,
  213 Ill.2d 351 (2004) ........................................................................................8, 9

*Young v. Bryco Arms*,
  213 Ill. 2d 433 (2004) .......................................................................................8, 9

**State Appellate Court Cases**

*Riordan v. Int'l Armament Corp.*,
  132 Ill. App. 3d 642 (1985) ...................................................................................8

**Statutes**

18 U.S.C. § 923 .....................................................................................................5

21 U.S.C. § 387f ...................................................................................................4

31 U.S.C. § 5311 ..................................................................................................5

**Other Authority**

21 C.F.R. § 1140.14 ..............................................................................................4

27 C.F.R. §§ 478.123-478.125 ..............................................................................5

815 ILCS 505 ........................................................................................................5

Federal Firearms Listings, ATF.gov,
  https://www.atf.gov/firearms/listing-federal-firearms-licensees (last accessed on Jan. 31,
  2023) ...................................................................................................................4

**ARGUMENT IN REPLY**[1]

Smith & Wesson bears the burden of proving federal subject matter jurisdiction. Instead, it misreads the Complaint in a strained effort to shoehorn Plaintiffs' claims into one of two narrow categories of federal jurisdiction—federal officer and federal question jurisdiction. The end result is an analysis of legal principles that stretches those narrow categories of jurisdiction beyond recognition. Plaintiffs' Complaint advances exclusively state-law claims against Smith & Wesson, a private company, alleging it violated the Illinois Consumer Fraud Act ("ICFA") and acted negligently by marketing its M&P 15 as a highly-lethal, high-adrenaline, ammunition-burning, military-style weapon; targeting impulsive youth and young men with militaristic delusions; and falsely suggesting an association with "Military & Police"—all with knowledge that the M&P 15 and other similar assault rifles have been increasingly used to carry out mass shootings. Compl. ¶ 5. Yet Smith & Wesson ignores all the Complaint's allegations but a handful of paragraphs that mention the National Firearms Act ("NFA") as one of many alternative bases for ICFA and negligence liability. *See id*. ¶¶ 174, 186 (alleging that Smith & Wesson's marketing was deceptive because it did not identify the M&P 15 as a weapon regulated by the NFA).

By mischaracterizing and seeking to prematurely litigate the merits of Plaintiffs' claims, Smith & Wesson seeks to twist this case into one solely about the definition of machineguns under federal law. The Court should reject this gambit, and with it both of Smith & Wesson's proposed bases for federal jurisdiction. First, Smith & Wesson attempts to invoke federal officer

---

[1] Though the above-captioned cases were related and reassigned to this Court, the Court's Courtroom Deputy indicated in correspondence with counsel that plaintiffs represented by different counsel should file separate reply briefs. Accordingly, the undersigned file this brief on behalf of the Plaintiffs in the *Turnipseed* and *Chupack* matters.

jurisdiction without satisfying the Supreme Court's one necessary condition for doing so: a formal relationship with the federal government beyond intense regulation. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007). Its (alleged) compliance is insufficient as a matter of law. *Id.*; Opp'n at 4. As for federal question jurisdiction, Smith & Wesson must ignore nearly the entire complaint to make its argument that the Complaint necessarily raises a federal issue. The state-law claims cannot be swept aside so easily. Smith & Wesson has therefore fallen far short of its burden to establish either federal officer or federal question jurisdiction, and the Court should remand this case to state court.

## I.      Smith & Wesson Fails to Show Federal Officer Jurisdiction.

Smith & Wesson attempts to avoid the strictures of the narrow, federal-officer path to jurisdiction, because actually contending with them would demonstrate that no such jurisdiction lies here. Federal officer jurisdiction applies where a private company acts as a de facto federal officer, through either a contractual relationship, employment, agency arrangement, some payment (other than taxes), or through the delegation of legal authority from the federal government. *See Watson*, 551 U.S. at 153-54 (outlining factors that suggest a defendant was "acting under" federal officers). The best Smith & Wesson can do is assert the existence of some nebulous "unique, symbiotic manufacturer-ATF partnership." Opp'n at 4. Without asserting evidence of a formal relationship with the federal government, Smith & Wesson cannot remedy the "fatal flaw" in *Watson*, where the Supreme Court denied federal officer jurisdiction because it "found no evidence of any delegation of legal authority from the FTC to the industry association . . . . Nor is there evidence of any contract, any payment, any employer/employee

relationship, or any principal/agent arrangement."[2] *Watson*, 551 U.S. at 156; *see also DeAngelo v. Artis Senior Living of Elmhurst*, LLC, No. 22 C 02538, 2022 WL 3357276, at *5 (N.D. Ill. Aug. 15, 2022) (defendants cited "an extensive regime of regulations and directives governing [its] operations, but . . . nonetheless remained private service providers"). Smith & Wesson put forth no evidence of such a relationship because it does not exist.

Smith & Wesson has therefore failed to establish federal officer jurisdiction. Core to Smith & Wesson's position is that the federal government "directed" Smith & Wesson's actions as a seller of firearms. Smith & Wesson cites three new sources in its Opposition, but none establish that the government directs Smith & Wesson's actions sufficiently to make it a federal officer. Instead, two cases are pulled out of context for quotes about the regulation of firearms in this country generally. In *Huddleston v. U.S.*, the Supreme Court commented that commerce in firearms must go through licensed dealers, in a case determining whether the law making it a crime to lie to a "licensed dealer" of firearms covers a lie told to a pawnshop. 415 U.S. 814, 824 (1974). In *Abramski v. U.S.*, the Court quoted *Huddleston* (and Congress) in remarking that licensed dealers are the "principal agent of federal enforcement," in determining that it violated the same federal law to lie about the true purchaser of a firearm (*i.e.*, a straw purchaser) when purchasing from a dealer. 573 U.S. 169, 187 (2014). But these observations do not amount to Supreme Court holdings that dealers are literally agents of the federal government. That would be an absurd result arising from, at most, dicta. Companies across the economy sell restricted

---

[2] Defendants attempt to circumvent *Watson*'s undeniable mandate that a special relationship requires something more than regulation by poking at other features of the defendants' relationship with the federal government in *Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020). Opp'n at 4 n.3. But even after reciting the amount of control the government exercised in *Baker* (at a level Defendants do not even attempt to match), the defendants in *Baker* also had a formal contractual relationship with the government, as *Watson* required. 962 F.3d. at 942.

products subject to federal laws that require enforcement at the point of sale: no court would find

that a 7-11 clerk becomes a federal officer when she asks for identification before selling

cigarettes. *See* 21 U.S. Code § 387f; 21 C.F.R. § 1140.14(b)(1). Smith & Wesson cites no case

supporting the proposition that the *regulation* of a private industry that wants to sell dangerous

products elevates that industry to a wing of the federal government. To the contrary, *Watson*

holds otherwise, and Smith & Wesson's failure to meaningfully contend with the substance of

the case dooms its federal officer jurisdiction argument.

      The third citation, and the only of the three that actually discusses this supposed

partnership, is an open letter to "[a]ll Federal Firearm Licensees,"[3] informing the licensees of the

importance of their compliance with the Gun Control Act. Here, Smith & Wesson relies on the

ATF's rhetorical use of the word "partnership," but mere wording does not "bring a private

action within the scope of [§ 1442(a)(1)]." *Watson*, 551 U.S. at 152. The hollowness of the word

is clear in context, as the rest of the letter reminds the licensees they must "comply with all

Federal laws and regulations that govern your firearms business," threatening consequences up

to criminal prosecution if they fail to do so. Smith & Wesson argues still that it performs

"government functions," including "tracing crime guns, collecting certain taxes, and maintaining

registration and transfer records." Opp'n at 4. Yet, rather than cite to a contract or other

delegation of legal authority—as it must—Smith & Wesson cites to laws and regulations that

*require* it to maintain these records and permit the federal government access to trace firearms

used in a crime.[4] Compliance with laws and regulations, even "intense" ones, is insufficient to

---

[3] For reference, as of January 2023, there are 81,904 Federal Firearm Licensees in the United
States. Federal Firearms Listings, ATF.gov, https://www.atf.gov/firearms/listing-federal-firearms-
licensees (last accessed on Jan. 31, 2023).
[4] Were this enough, not only would all 81,904 federal firearm licensees become effectively
immune to suit in state court, but *any* business in a regulated industry would wield the same

support federal officer jurisdiction. *Id.*; 18 U.S.C. § 923(g)(1)(B); 27 C.F.R. §§ 478.123-478.125; *Watson*, 551 U.S. at 153.

In claiming that Plaintiffs' Complaint addresses conduct taken while Smith & Wesson was "acting under color of federal authority," Smith & Wesson has to shoehorn Plaintiffs' unfair marketing claims into Smith & Wesson's so-called partnership with ATF. This results in a strained *ipse dixit* that Smith & Wesson was permitted by ATF to sell these firearms, accordingly was allowed to market them, and accordingly was acting under color of federal law when it marketed them. *See* Opp'n at 6 ("Plaintiffs cannot separate the lawful attributes of a firearm from the marketing of those attributes."). But this betrays Smith & Wesson's entire argument: the sale of a heavily-regulated product does not a federal officer make.[5] And regardless, this proposition is not true under Illinois law—a legal product may still be marketed in a manner that is illegal under the Illinois Consumer Fraud and Deceptive Business Practices Act. Compl. ¶¶ 159-79; 815 ILCS 505/2. Therefore, even if the Court were to credit Smith & Wesson's argument that it sometimes acts in "partnership" with ATF, Smith & Wesson's marketing certainly does not fall under the purview of the laws and regulations requiring it maintain records and permit access for law enforcement tracing. The only actions Smith & Wesson describes as "acts at the behest of

---

power. For instance, the Bank Secrecy Act, 31 U.S.C. § 5311, *et. seq*, obligates financial institutions—broadly defined—to generate reports for large cash transfers, foreign financial agency transactions, and suspicions of money laundering, terrorist financing, or other financial crimes. Smith & Wesson's argument would permit every bank, credit union, broker, travel agency, casino, payday lender, or check-cashing business to remove all lawsuits against it to federal court. *See id.*

[5] Casting about for support, Smith & Wesson attempts to bring in extrajudicial statements by some of Plaintiffs' counsel criticizing the ATF for "working for" the gun industry. *See* Opp'n at 3. What Smith & Wesson seeks to prove with this argument is unclear—the position it advances in the rest of the brief is that it is the agent of ATF, not the other way around. As should be apparent, Smith & Wesson is rounding the edges off a nuanced argument that is not on-point for the issues presented here.

the ATF" are "NFA identification, taxation, registration." Opp'n at 5. The choice to market the M&P 15 in the ways Plaintiffs allege was not mandated by the government—that was Smith & Wesson's choice alone.[6]

Smith & Wesson seeks to characterize Plaintiffs' claims regarding Smith & Wesson's marketing practices—situating the use of a lethal weapon as a thrilling path to Special Forces-like physical prowess, even after it was used in multiple mass shootings—as an attack on federal power, without explaining precisely with which federal policy this case is in conflict. Opp'n at 6. The purpose of federal officer jurisdiction is not to generally keep matters out of state court that seem to touch on state law; it is to keep hostile states from interfering with government operations, and permit officers to raise immunity defenses cognizable in a federal forum. *Watson*, 551 U.S. at 150-51; *see also State of Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("The [federal officer jurisdiction was] enacted to maintain the supremacy of the laws of the United States by safeguarding officers and others acting under federal authority against peril of punishment for violation of state law or obstruction or embarrassment by reason of opposing policy on the part of those exerting or controlling state power."). State-law consumer protection and negligence claims against a private corporation do not affect the government's ability to carry out operations or policies.

---

[6] In fact, Smith & Wesson markets its M&P 15 in *defiance* of an agreement with the federal government. *See* Compl. ¶¶ 57-58 (Smith & Wesson entered into a settlement agreement with the federal government in 2000 in which it agreed to "[n]ot market any firearm in a way that would make the firearm particularly appealing to juveniles or criminals."). While Smith & Wesson's violation of that settlement agreement is not a claim in this case (nor is it Plaintiffs' to bring), it demonstrates that Smith & Wesson is not acting under color of federal authority when it markets the M&P 15.

## II.     Smith & Wesson Fails to Show Federal Question Jurisdiction.

Smith & Wesson's arguments for federal question jurisdiction hinge on mischaracterizing the Complaint as seeking "to have a state court overturn the ATF's determination that the M&P 15 is not a 'machinegun' under the NFA." Opp'n at 1. But Plaintiffs' claims are all state-law causes of action concerning Smith & Wesson's marketing of the AR-15 assault rifle in violation of its duties under the ICFA and the common law; these claims do not arise under federal law, do not necessarily raise a federal issue, and are not completely preempted simply because there are federal regulations regarding firearms. As set forth in Plaintiffs' opening Motion, the arguments for federal question all fall flat when one applies the proper standards, views the Complaint as a whole, and follows applicable precedent.

### A.     Plaintiffs' State Law Claims are not Insubstantial, Implausible, or Foreclosed.

Smith & Wesson's Opposition, like its Notice of Removal, contorts the artful pleading doctrine and "improperly seeks to litigate the merits of the plaintiff's claims." *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019). For purposes of jurisdictional analysis, courts only disregard claims if they are "wholly insubstantial and frivolous"—a standard explicitly adopted by both the Supreme Court and Seventh Circuit. *See Shapiro v. McManus*, 577 U.S. 39, 45 (2015) ("[O]nly 'wholly insubstantial and frivolous' claims" are disregarded for jurisdictional purposes); *Restoration Risk Retention Grp., Inc. v. Gutierrez*, 880 F.3d 339, 347 (7th Cir. 2018) (claims are disregarded for jurisdictional purposes "only when the [] claim is wholly, obviously, or plainly insubstantial or frivolous . . . absolutely devoid of merit or no longer open to discussion" (internal quotation marks omitted)). Smith & Wesson attempts to rewrite that standard in a footnote. *See* Opp'n at 8 n.9. There, Smith & Wesson claims that the "standard applied by the Supreme Court and Seventh Circuit [in *Shapiro*

7

and *Restoration Risk*] is broader than the one applied in *Purdue*," *see id*. But that is an incorrect statement of the law. There is nothing broad about the applicable standard, as *Shapiro* and *Risk Retention* themselves make clear; it is "rigorous" and applies to "only the most extreme cases." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 587 (7th Cir. 2017).

Properly viewed against that standard, none of Smith & Wesson's arguments suggest that this is one of those extreme cases. Plaintiffs' allegations and theory of the case are different than those at issue in *Young v. Bryco Arms*, *City of Chicago v. Beretta*, and *Riordan v. International Armament Corp.*, and accordingly, those cases do not foreclose Plaintiffs' ICFA and negligence claims. *See* Opp'n at 8-9. For example, *Beretta* rejected a much broader alleged duty "to the city of Chicago or its residents to prevent their firearms from ending up in the hands of persons who use and possess them illegally." 213 Ill.2d 351, 393 (2004) (internal quotations omitted). *Riordan* addressed whether firearm manufacturers owe a general "duty . . . to control the distribution of its handguns" and "duty to warn of a [handgun's] dangerous propensities." 132 Ill. App. 3d 642, 647 (1985). These holdings do not foreclose Plaintiffs' claims that Smith & Wesson violated its duty under the ICFA and under the common law not to engage in unfair or deceptive marketing by, *e.g.*, developing marketing campaigns targeted towards youth, including impulsive young men with military complexes, adolescents drawn to risk-taking, and young players of first-person shooter games like Call of Duty; marketing their AR-15-style weapons as well-suited for civilians to carry out military-style combat missions; and falsely suggesting that the M&P 15 is associated with the military and law enforcement—all with knowledge that assault rifles like the M&P 15 have repeatedly been used in mass shootings. *See* Compl. ¶¶ 5, 160-68, 181-82.

Plaintiffs' allegations regarding causation are also far from frivolous. Unlike *Beretta and Young,* where the claimed harm was public nuisance that was the "aggregate result" of unlawful firearm use, *see Beretta,* 213 Ill. 2d at 432; *Young,* 213 Ill. 2d at 456; Opp'n at 8, Plaintiffs here allege that Smith & Wesson's conduct caused harm stemming from a particular use of its M&P 15 assault rifle. Specifically, Plaintiffs' Complaint alleges that the Shooter "was induced or encouraged toward unlawful use of his M&P 15 assault rifle by Smith & Wesson's unfair and deceptive marketing tactics and the public image of AR-15-style weapons they promoted."[7] Compl. ¶ 135. This allegation is supported by numerous facts, including Smith & Wesson's use of the "first-person shooter aesthetic" in its advertising, the publication of Smith & Wesson ads "on social media platforms disproportionately visited by younger consumers," the Shooter's use of "first-person shooter games [*e.g.*, Call of Duty] featuring variants of the M&P[ ]15 Rifle" and his creation of artwork featuring military and law enforcement attire as well as assault rifles. *Id.* ¶¶ 63, 65, 118-21, 127-29. The allegations that the Shooter was influenced by Smith & Wesson advertising are thus far from "threadbare recitals," far from implausible, and certainly are not "wholly insubstantial."

Courts have "long distinguished between" the assessment of claims "for jurisdictional purposes . . . and failing to state a claim for relief on the merits." *Shapiro,* 577 U.S. at 45. Smith & Wesson's citations to *Stericycle, Inc. v. Carney*, *Twombly*, and *Iqbal* are therefore not applicable since each of those cases addressed Rule 12(b)(6) motions. *See* Opp'n at 9 (citing *Stericycle*, No. 12 C 9130, 2013 WL 3671288, at *6 (N.D. Ill. July 12, 2013)). Determining

---

[7] This allegation distinguishes this case from *Bubalo v. Navegar, Inc.*, where the Court rejected Plaintiffs' negligent marketing claim because "Plaintiffs do not present any allegations or evidence to establish that Navegar's marketing style was 'a factor' in Blue's use of the TEC–DC9." No. 96 C 3664, 1997 WL 337218, at *9 (N.D. Ill. June 13, 1997); *see also* Opp'n at 10.

jurisdiction based on whether the Complaint stated a claim for relief on the merits would hold Plaintiffs to a "standard both too demanding and inconsistent with [Supreme Court] precedents." *Shapiro*, 577 U.S. at 45. The Court should therefore reject Smith & Wesson's request to prematurely litigate the merits of Plaintiffs' ICFA and negligence claims in its effort to manufacture federal jurisdiction.[8]

> **B.      Plaintiffs' Claims Do Not Create Federal Jurisdiction Simply Because They Mention the NFA.**

Smith & Wesson also fails to show that this case falls into the "special and small category" of cases where federal question jurisdiction lies over state-law claims. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013). First, as stated in Plaintiffs' Motion to Remand, the Supreme Court has made clear that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986); Pls.' Motion at 7-8. Tellingly, Smith & Wesson's Opposition does not address this binding precedent.

As in *Merrell Dow*, Plaintiffs' allegation that Smith & Wesson violated the NFA is just one example of unfair and deceptive marketing and one potential element of their state causes of action—not a standalone claim. Unlike the Second Circuit case Smith & Wesson cites, *see* Opp'n at 12, Plaintiffs do not seek any separate, distinct relief related to the alleged NFA

---

[8] Smith & Wesson's suggestion that the Second Amendment or *N.Y. State Rifle & Piston Ass'n v. Bruen* forecloses Plaintiffs' claims does not even merit a response. *See* Opp'n at 10. As discussed in Plaintiffs' Motion to Remand, there is no legal precedent holding that the Second Amendment protects a public right to access these AR-15 style firearms, and in any event, this lawsuit does not ask any court "to ban all AR-type firearms." *Id.*

violations. *Compare Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (noting that plaintiff specifically requested "a declaratory judgment establishing that [defendant's] actions violated [federal law]," and that plaintiff could not obtain that relief without prevailing on the federal issue) *with* Compl. at 53 (Prayer for Relief, not seeking any relief related to federal law). Contrary to Smith & Wesson's inaccurate statements that "Plaintiffs transparently seek an order requiring Smith & Wesson to disclose that the M&P rifle is an NFA weapon" and that "Plaintiffs seek to eliminate the 'sale' of weapons such as the M&P rifle," *see* Opp'n at 12, Plaintiffs' Complaint seeks no such relief. *See* Compl. ¶¶ 174, 186; *id.* at 53 (Prayer for Relief). There is no federal claim "disguised" as a state claim here.[9]

By the same token, Smith & Wesson also fails to show that this case satisfies the elements established by *Grable* to identify the "slim category" of cases that create federal jurisdiction over state-law claims. Smith & Wesson's argument that "a federal issue has been necessarily raised," Opp'n at 11, would require the Court to ignore all of the allegations in the Complaint save for the few paragraphs mentioning the NFA. *See* Opp'n at 1 ("When stripped of the facially insubstantial, implausible, or foreclosed state-law claims . . . , all that remains is an attempt to have the state court overturn the ATF's determination that the M&P 15 is not a 'machinegun' under the NFA."). When one considers the Complaint as a whole, as the Court must at this stage, Smith & Wesson's contention that "the state court *must* adjudicate the meaning and application of the NFA to resolve Plaintiffs' claims," *see* Opp'n at 11 (emphasis added), is plainly incorrect. Plaintiffs allege multiple theories of ICFA and negligence liability,

---

[9] Indeed, no federal right of action exists that would allow Plaintiffs to seek relief from Smith & Wesson's unfair and deceptive marketing. As discussed further below, Smith & Wesson's suggestion that the APA "suppl[ies] a private right [of] action and the exclusive vehicle to litigate the appropriate classification of firearms under federal law," Opp'n at 14-15, badly misreads the Complaint by ignoring all of Plaintiffs' allegations of unfair marketing.

most of which do not involve the NFA at all. Courts presented with the identical circumstances correctly find that *Grable* does not apply. *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 (finding case did not meet first element of the *Grable* test where the "alleged state-law duties mean that the construction of the [federal statute cited in the Complaint] is not a necessary part of the plaintiff's claims"); *see also Corporan v. Wal-Mart Stores East*, 194 F. Supp. 3d 1128, 1132 (D. Kan. 2016) (finding no *Grable* jurisdiction where "violation of the Gun Control Act is just one way plaintiffs intend to establish their state law claim that defendants were negligent and even if plaintiffs do not establish a violation of the Gun Control Act, they might still be entitled to recover under an alternative theory of negligence"); *see also* Pls.' Motion at 9-10; Opp'n at 12-13 (failing to address either *Illinois Public Risk Fund* or *Corporan*).

Plaintiffs' non-NFA theories of liability also distinguish this case from *New York v. Arm or Ally, LLC*, No. 22-CV-6124 (JMF), 2022 WL 17496413, (S.D.N.Y. Dec. 8, 2022). In that case, the State of New York brought suit under a state statute creating "liability for gun industry members that . . . fail to establish and utilize reasonable controls and procedures to prevent [their] qualified products from being possessed, used, marketed or sold unlawfully in New York state." *Id.* at *3 (internal quotation marks omitted). The statute defined "qualified product" as "hav[ing] the same meaning as defined in 15 U.S.C. section 7903(4)." *Id.* at *5 (alteration in original). That claim "necessarily raised" a federal question because it could *only* succeed if New York proved that the products at issue (ghost guns) were "qualified products" within the meaning of federal law. *Id.* (distinguishing New York's claims from other cases where "plaintiff's claim was based on alternative theories, at least three of which have no necessary federal element" (internal quotation marks omitted)). Here, by contrast, the state court could decide Plaintiffs' claims based on, *e.g.*, Smith & Wesson's unfair targeting of its marketing towards youth or its

12

deceptive marketing suggesting an association with the military and law enforcement, Compl. ¶¶160-67, and never even reach the allegations regarding NFA violations. Therefore, Plaintiffs' ICFA and negligence claims do not necessarily raise a federal issue as required for *Grable* jurisdiction.[10]

## C.    The "Extraordinary" Complete Preemption Doctrine Does Not Apply Here.

Smith & Wesson's Opposition does not raise any serious arguments in support of complete preemption. *See* Opp'n at 14-15. For one thing, it completely ignores Plaintiffs' allegations of unfair and deceptive marketing, again mischaracterizing Plaintiffs' claims as seeking only to "litigate the appropriate classification of firearms under federal law." *Id.* at 15. Even as to the alleged violations of the NFA, Smith & Wesson fails to show that complete preemption—a doctrine distinct and far rarer than the affirmative defense of preemption— applies. *See Mackey v. Tower Hill Rehab., LLC*, 569 F. Supp. 3d 740, 744 (N.D. Ill. 2021) (explaining that "ordinary preemption operates as an affirmative defense—not as an independent basis for federal jurisdiction").

As set forth in Plaintiffs' Motion, the complete preemption doctrine has only been applied to a "select group of claims." *Corp. Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 60 (N.D. Ill. 1992) ("The Supreme Court has expressed a reluctance to find complete preemption," only occasionally finding "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (internal quotation marks omitted)). Smith & Wesson falls far short of supporting a novel extension of that doctrine to Plaintiffs'

---

[10] Plaintiffs need not address the other *Grable* factors here, since each factor is mandatory and since the *Grable* test is discussed in more detail in Plaintiffs' Motion and the *Roberts* Plaintiffs' Motion to Remand.

unfair marketing claims. The cases cited in its Opposition all relate to statutory schemes not at issue here, *see Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 233 (4th Cir. 1993) (Copyright Act); *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 179 (4th Cir. 2017) (ERISA); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968) (LMRA), and some still decline to find complete preemption, *see Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003), *as amended* (Sept. 22, 2003) (finding the "Exchange Act does not create exclusive jurisdiction for any and all actions that happen to target false advertising and deceptive sales practices in the sale of callable CDs"); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398 (1987) (declining to find that LMRA completely preempts plaintiff's state-law contract claims, even though defendant might later succeed on an affirmative defense of preemption).

Nowhere does Smith & Wesson make a "clear showing of Congressional intent" to displace state law regarding the sale and marketing of firearms. *See Mackey*, 569 F. Supp. 3d at 744 ("[A]ny further expansion of the doctrine . . . requires a clear showing of Congressional intent to eliminate state law entirely."). Nor could it make such a showing, as other courts have found. *Jefferson v. ROSSI, S.A.*, No. 01-CV-2536, 2002 WL 32154285, at *5 (E.D. Pa. Jan. 22, 2002) ("[N]othing in the legislative history of [the Gun Control Act or NFA] reveals a clear Congressional intent to create removal jurisdiction through complete preemption."); *City of Camden v. Beretta U.S.A. Corp.*, 81 F. Supp. 2d 541, 549 (D.N.J. 2000) ("A review of the text and legislative history of the Gun Control Act plainly shows that it is not a complete preemption statute. There is no indication whatsoever that Congress intended to displace state law claims against purveyors of firearms."). Whether Plaintiffs have a right of action under the Administrative Procedure Act ("APA") to litigate the definition of machine guns is irrelevant,

14

since neither the NFA nor the APA creates a federal cause of action "vindicating the same interest" as Plaintiffs' claims do here—namely, their right not to be injured by unfair and deceptive marketing. *See Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 788 (7th Cir. 2002). In the absence of a "federal remedy" for this interest, Plaintiffs cannot be "forced into federal court." *Id.*

## III.    Conclusion

For all the foregoing reasons, as well as the reasons set forth in Plaintiffs' Motion to Remand, the Court lacks subject matter jurisdiction over this case and should remand it to state court.

Respectfully Submitted,

ELIZABETH TURNIPSEED,

*and*

JOSHUA CHUPACK, individually and as next friend of I.C.,

Dated: February 3, 2023

By: /s/ J. Eli Wade-Scott
*One of Plaintiffs' Attorneys*

Jay Edelson
jedelson@edelson.com
Ari Scharg
ascharg@edelson.com
David I. Mindell
dmindell@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Amy Hausmann
abhausmann@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654

Tel: (312) 589-6370
Fax: (312) 589-6378

Erin Davis*
edavis@bradyunited.org
Philip Bangle*
pbangle@bradyunited.org
BRADY CENTER TO PREVENT GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
Tel: (202) 370-8100

Donna J. Vobornik
donna.vobornik@dentons.com
Brian E. Cohen
brian.cohen@dentons.com
DENTONS
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
Tel: (312) 876-7370

*pro hac vice to be applied for