# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEELY ROBERTS, individually and as parent and next friend of C.R. and L.R., and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R.,<br><br>*Plaintiffs*,<br><br>v.<br><br>SMITH & WESSON BRANDS, INC., SMITH & WESSON SALES COMPANY, SMITH & WESSON, INC., BUDSGUNSHOP.COM, LLC, RED DOT ARMS, INC., ROBERT CRIMO, JR., and ROBERT CRIMO, III,<br><br>*Defendants*. | Lead Case No. 1:22-cv-06169<br><br>Related Case Nos.   1:22-cv-06171<br>                                   1:22-cv-06178<br>                                     1:22-cv-06181<br>                                     1:22-cv-06183<br>                                     1:22-cv-06185<br>                                     1:22-cv-06186<br>                                     1:22-cv-06190<br>                                     1:22-cv-06191<br>                                     1:22-cv-06193<br>                                     1:22-cv-06359<br>                                     1:22-cv-06361<br><br>Hon. Steven C. Seeger |

# REPLY BRIEF IN FURTHER SUPPORT OF
# ROBERTS PLAINTIFFS' MOTION TO REMAND

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

I. SMITH & WESSON IS NOT ENTITLED TO FEDERAL-OFFICER REMOVAL. ..................................................................................................................2

II. THERE IS NO FEDERAL-QUESTION JURISDICTION OVER PLAINTIFFS' PURELY STATE-LAW CLAIMS. .............................................................................5

    1. The Complaint Does Not "Necessarily Raise" Federal Issues. ..............................5

    2. No Issue of Federal Law Is "Actually Disputed" in the Complaint. ......................8

    3. The Complaint Does Not Raise a "Substantial" Federal Issue. .............................9

    4. Exercising Federal Jurisdiction Would Disrupt the Federal-State Balance. ............9

III. SMITH & WESSON'S PREEMPTION ARGUMENT IS MERITLESS. ........................10

IV. PLAINTIFFS SHOULD BE AWARDED ATTORNEYS' FEES AND EXPENSES. ...............................................................................................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramski* v. *United States*,
   573 U.S. 169 (2014)............................................................................................................3

*Apolinar* v. *Polymer80, Inc.*,
   2022 Cal. Super. LEXIS 2591 (Cal. Super. Ct. L.A. Cnty. Feb. 2, 2022)..............................10

*Baker* v. *Atl. Richfield Co.*,
   962 F.3d 937 (7th Cir. 2020) ..............................................................................................3

*Bd. of Cnty. Comm'rs of Boulder Cnty.* v. *Suncor Energy (U.S.A.) Inc.*,
   245 F.4th 1238 (10th Cir. 2022) ..........................................................................................4

*Bennett* v. *Southwest Airlines Co.*,
   484 F.3d 907 (7th Cir. 2007) ..............................................................................................8

*Blanco* v. *Bath & Body Works, LLC*,
   2022 WL 1908980 (N.D. Ill. June 3, 2022)........................................................................10

*Broder* v. *Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005)................................................................................................6

*Brokaw* v. *Boeing Co.*,
   137 F. Supp. 3d 1082 (N.D. Ill. 2015) .............................................................................2, 4

*Bureau* v. *BASF Corp.*,
   2022 WL 807372 (M.D. La. Jan. 3, 2022)..........................................................................5

*Caterpillar, Inc.* v. *Williams*,
   482 U.S. 386 (1987)............................................................................................................5

*Christianson* v. *Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)............................................................................................................6

*City of Chicago* v. *Beretta U.S.A. Corp.*,
   213 Ill. 2d 351 (2004) ........................................................................................................8

*City of Gary, Ind. ex rel. King* v. *Smith & Wesson Corp.*,
   94 F. Supp. 2d 947 (N.D. Ind. 2000) ..................................................................................6

*Empire Healthchoice Assurance Inc.* v. *McVeigh*,
   547 U.S. 677 (2006)............................................................................................................8

*Empress River Casino Corp.* v. *Loc. Unions No. 9 & 176,*
 *Int'l Bhd. of Elec. Workers*, 1994 WL 262075 (N.D. Ill. June 10, 1994) .................................6

*Estados Unidos Mexicanos* v. *Smith & Wesson Brands, Inc.*,
 2022 WL 497526 (D. Mass. Sept. 30, 2022) ...........................................................................5

*Goldstein* v. *Earnest*, No. 37-2020-00016638,
 slip op. (Cal. Super. Ct. San Diego Cnty. July 2, 2021) .....................................................9, 10

*Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*,
 545 U.S. 308 (2005) ...............................................................................................1, 5, 7, 10

*Graves* v. *3M Company*,
 17 F.4th 764 (8th Cir. 2021) ................................................................................................4, 5

*Huddleston* v. *United States*,
 415 U.S. 814 (1974) ..................................................................................................................3

*Illinois Public Risk Fund* v. *Purdue Pharma L.P.*,
 2019 WL 3080929 (N.D. Ill. July 15, 2019) ............................................................................7

*Jefferson* v. *Amadeo Rossi, S.A.*,
 2002 WL 32154285 (E.D. Pa. Jan. 22, 2002) ........................................................................10

*Lott* v. *Pfizer Inc.*,
 492 F.3d 789 (7th Cir. 2009) .................................................................................................10

*Merrell Dow Pharm. Inc.* v. *Thompson*,
 478 U.S. 804 (1986) ..................................................................................................................9

*Mesa* v. *California*,
 489 U.S. 121 (1989) ..................................................................................................................2

*New York* v. *Arm or Ally, LLC*,
 2022 WL 17496413 (S.D.N.Y. Dec. 8, 2022) .........................................................................9

*Soto* v. *Bushmaster Firearms Int'l, LLC*,
 202 A.3d 262 (Conn. 2019). ....................................................................................................9

*Tisdale* v. *Pagourtzis*,
 2020 WL 7170491 (S.D. Tex. 2020) .....................................................................................10

*Watson* v. *Philip Morris Co., Inc.*,
 551 U.S. 142 (2007) ..............................................................................................................2, 4

*Young* v. *Bryco Arms*,
 213 Ill. 2d 433 (2004) ..........................................................................................................7, 8

**Statutes**

15 U.S.C. § 7903(4) ...................................................................................................................9

28 U.S.C. 1441(c) ....................................................................................................................5

28 U.S.C. 1446(b)(2)(A) ..........................................................................................................7

28 U.S.C. § 1447(c) ............................................................................................................1, 10

**Other Authorities**

ATF Handbook § 7.2.4 .............................................................................................................3

Smith & Wesson 2022 Annual Report......................................................................................4

Plaintiffs[1] respectfully submit this reply brief in further support of their motion to remand and for fees and costs associated with Smith & Wesson's removal pursuant to 28 U.S.C. § 1447(c).

**PRELIMINARY STATEMENT**

Smith & Wesson's opposition (the "Opposition") confirms—as Plaintiffs demonstrated in their Motion to Remand (the "Motion")—that there is no federal jurisdiction here and therefore no basis for Smith & Wesson's removal petition. The Complaint asserts purely state-law claims against Smith & Wesson. (Mot. 3.) Those claims do not require the resolution of any federal-law issue that would give rise to federal-question jurisdiction under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)—a basis for removal that is rarely applied, particularly in the Seventh Circuit. And there is no support in law or fact for Smith & Wesson's extraordinary contention that the activities described in the Complaint were directed by or carried out at the behest of the federal government, such that Smith & Wesson, a for-profit company, may invoke the removal statute limited to the federal government and its officers.

Unable to meet its burden to establish federal jurisdiction, Smith & Wesson directs its arguments at a complaint of its own making that bears no resemblance to the Complaint Plaintiffs filed. The Opposition begins with a false statement—that "Plaintiffs' counsel have publicly proclaimed that the purpose of this case is to 'stop' the 'sale' of 'assault rifles' like the M&P rifle" (Opp. 1)—that is belied by the allegations of the Complaint and the text of the deceptively quoted source.[2] Effectively conceding that the Complaint does not give rise to federal jurisdiction, Smith

---

[1] Counsel represents plaintiffs in the *Roberts* action (Lead Case No. 1:22-cv-06169) and nine other related actions (Nos. 1:22-cv-06171, 1:22-cv-06178, 1:22-cv-06181, 1:22-cv-06183, 1:22-cv-06185, 1:22-cv-06186, 1:22-cv-06190, 1:22-cv-06191, and 1:22-cv-06193) (collectively, "Plaintiffs"). Per the Court's January 4, 2023 Minute Entry (ECF No. 39), Plaintiffs file this consolidated reply. References to the Complaint are to the *Roberts* Complaint (ECF No. 1-2); however, the complaints filed in the other nine actions are substantially similar, and Plaintiffs' arguments apply equally to all complaints.

[2] The quoted source is a press release from counsel for the *Turnipseed* plaintiffs, which states: "The complaint seeks to hold Smith & Wesson liable for unlawful marketing and advertising of its M&P 15

1

& Wesson instead asks this Court to find a federal issue by "stripping" the Complaint of all of its claims and the vast majority of its allegations, which Smith & Wesson wrongly asserts are "insubstantial, implausible or foreclosed." And, incredibly, it asks this Court to resolve the merits of Plaintiffs' state-law claims at this nascent stage of the litigation. But a defendant is not permitted to rewrite a complaint to manufacture federal jurisdiction; and it cannot short circuit state-court litigation by having a federal court preemptively rule on state-law claims properly filed in state court. These cases should be remanded to Plaintiffs' chosen forum, and fees and costs should be assessed against Smith & Wesson for its improper removal.

## ARGUMENT

### I. SMITH & WESSON IS NOT ENTITLED TO FEDERAL-OFFICER REMOVAL.

No court has ever granted federal-officer removal to a for-profit gun manufacturer, and Smith & Wesson's argument that purported compliance with federal law renders a corporation a federal officer has been repeatedly rejected. (Mot. 4–6.)

Smith & Wesson cannot show, as it must, that it was "acting under" the direction of the ATF in "carrying out the 'acts' that are the subject of the [Complaint]."[3] *Watson* v. *Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007); *see also Brokaw* v. *Boeing Co.*, 137 F. Supp. 3d 1082, 1096 (N.D. Ill. 2015); *Mesa* v. *California*, 489 U.S. 121, 132 (1989). The "acts" that form the core of Plaintiffs' Complaint concern Smith & Wesson's marketing and advertising practices: (1) its intentional targeting of young men prone to risk-taking behavior, including by modeling its

---

**assault rifle** — the rifle used by the gunman who opened fire at Highland Park's Independence Day Parade . . . These plaintiffs are seeking to **stop** the irresponsible and unlawful **sale** and marketing of weapons of war like the ones used in the Highland Park attack." (ECF No. 48-2 at 3 (bolding words quoted in Smith & Wesson's Opposition).)

[3] Smith & Wesson also relies on a purported "unique, symbiotic manufacturer-ATF partnership created by the federal firearms laws," but it fails to show that any of its marketing was done at the behest of the federal government pursuant to this supposed "partnership." (Opp. 4; *see also* Mot. 4–5.)

marketing after first-person shooting games and touting the use of its M&P rifle in combat-like situations; (2) its deceptive association of the M&P rifle with U.S. military personnel to create the false impression that its products were utilized and/or endorsed by the military; and (3) its breach of a duty not to expose others to a reasonably foreseeable risk of injury by misleadingly and unfairly marketing firearms to teenagers and young civilian adults who are foreseeably likely to handle these weapons irresponsibly (*see, e.g.*, Compl. ¶¶ 7–9, 13, 65–105, 150–248). None of this conduct is "rooted in the ATF's administrative judgment that M&P rifles are not 'machineguns,'" as the Opposition disingenuously contends. (Opp. 3.)[4]

Moreover, Smith & Wesson does not cite a single case supporting the unprecedented application of federal-officer jurisdiction it urges here. Instead, it relies on cases that have nothing to do with removal and that stand for the unremarkable proposition that licensed firearm dealers are subject to federal regulations. *See Huddleston* v. *United States*, 415 U.S. 814 (1974); *Abramski* v. *United States*, 573 U.S. 169 (2014). Nor is *Baker* v. *Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020), on point, as Plaintiffs' allegations are not directed at Smith & Wesson's relationship with the federal government and do not arise out of a wartime directive from the federal government. Smith & Wesson does not—and cannot—contend that the federal government directed the unlawful and deceptive marketing practices that are the subject of the Complaint. The fact that Smith & Wesson operates in a regulated industry does not make it a federal officer. (Mot. 5–6.)

---

[4] There has been no ATF determination that Smith & Wesson's M&P rifles are not machineguns. The only support Smith & Wesson offers for its contrary assertion is a 1963 ATF letter discussing whether a *different* firearm from a *different* manufacturer with *different* features qualified as a machinegun 60 years ago—before passage of the Gun Control Act, modification of the definition of "machinegun" under the NFA, and ATF's promulgation of relevant regulations. *See* Opp. Ex. 6. That classification letter is inapplicable to the M&P rifles at issue here. *See generally* ATF Handbook § 7.2.4.1 (stating that ATF determination letters can be relied upon by recipient only), *at* https://www.atf.gov/firearms/docs/undefined/atf-national-firearms-act-handbook-chapter-7/download. And surely Smith & Wesson's *failure* to pay NFA taxes and comply with registration requirements for machineguns cannot be characterized as Smith & Wesson "acting under" the direction of the federal government.

3

Smith & Wesson's reliance on *Suncor* further undercuts its argument. The *Suncor* court declined to exercise jurisdiction because energy companies performed the at-issue acts—extraction of fossil fuels in the outer continental shelf pursuant to leases from the Department of the Interior—in service of a private commercial objective. *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 245 F.4th 1238, 1253 (10th Cir. 2022). Smith & Wesson attempts to distinguish itself from the *Suncor* defendants by suggesting that "the at-issue acts" here—marketing and advertising its firearms to consumers (*see, e.g.*, Compl. ¶¶ 69–71)—did not merely serve a "private objective" but "were performed to advance distinctly federal objectives embodied in the federal firearms partnership." (Opp. 5.) This argument again rests on a mischaracterization of Plaintiffs' allegations, which focus on Smith & Wesson's marketing and advertising of firearms to consumers, not actions taken on behalf of ATF. The company was not "obligate[d]" to advertise or manufacture firearms "by the government," or pursuant to "detailed government specifications aimed at satisfying pressing federal needs." *Suncor*, 24 F.4th at 1253. Make no mistake: Smith & Wesson is not manufacturing and selling firearms for any reason other than its commercial interest and pursuit of profits.[5] Under these circumstances, federal-officer removal is unavailable.

Smith & Wesson argues that federal-officer removal is proper because its marketing activities are "intertwined with the ATF's judgments about [the] firearms" Smith & Wesson advertises. (Opp. 5–6.) But courts have uniformly rejected similar arguments. *See, e.g.*, *Graves v. 3M Company*, 17 F.4th 764, 770 (8th Cir. 2021); *Suncor*, 245 F.4th at 1254; *Watson*, 551 U.S. at 145; *Brokaw*, 137 F. Supp. 3d at 1096. For instance, in *Graves*, the Eighth Circuit affirmed a district court ruling that 3M failed to establish that it was "acting under" the federal government's

---

[5] Smith & Wesson's recent 10-K touted the skills of its "sales and marketing teams" and noted that the company "once again . . . proved that no matter what—Smith & Wesson delivers profitability in any environment." Smith & Wesson 2022 Annual Report at 3, *at* https://ir.smith-wesson.com/static-files/dbf6f110-6dd3-44a9-bdea-f0b95d8f243f.

direction in disseminating and developing warnings and instructions for its commercial earplugs because 3M did not demonstrate that the government had any control over 3M's marketing. 17 F.4th at 770 ("[T]he Court would be hard-pressed to find that 3M could reasonably say 'the government made me do it'" as to marketing its product.). By contrast, the sole case on which Smith & Wesson relies is plainly inapplicable, for it addressed *a motion to dismiss* and did not consider a motion to remand at all. *Estados Unidos Mexicanos* v. *Smith & Wesson Brands, Inc.*, 2022 WL 497526 at *20–23 (D. Mass. Sept. 30, 2022).

## II. THERE IS NO FEDERAL-QUESTION JURISDICTION OVER PLAINTIFFS' PURELY STATE-LAW CLAIMS.

To remove these actions under *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), Smith & Wesson must satisfy all four *Grable* factors. But it fails on every one (Mot. 8), and its arguments to the contrary are meritless.[6]

### 1. The Complaint Does Not "Necessarily Raise" Federal Issues.

Smith & Wesson does not (and cannot) dispute that Plaintiffs bring only state-law claims (Mot. 9; *see also* Compl. ¶¶ 158–245) or that a state court could resolve those claims without reaching *any* issue of federal law. *See, e.g.*, *Caterpillar, Inc.* v. *Williams*, 482 U.S. 386, 392 (1987) (stating that plaintiff "may avoid federal jurisdiction by exclusive reliance on state law").

---

[6] Removal also was defective because Smith & Wesson failed to obtain consent from its co-defendants, and no exception to that "rule of unanimity" applies. (Mot. 7.) *First*, Smith & Wesson cannot remove under Section 1441(c) because Plaintiffs do not assert any federal claims, and thus there are no "federal-claim defendants." (Opp. 7.) Moreover, if, contrary to fact, Plaintiffs *did* assert a federal claim, this Court would have supplemental jurisdiction over the remaining state-law claims because all claims arise out of the same harm and events, of which Smith & Wesson's conduct was one part. (Mot. 7.) Removal under Section 1441(c) is not available where a court may exercise supplemental jurisdiction. (*Id.*) *Second*, Smith & Wesson should not be permitted to end-run the consent requirements of Section 1446(b)(2)(A) through a baseless invocation of Section 1442. Accordingly, unlike in *Bureau* v. *BASF Corp.*, 2022 WL 807372 (M.D. La. Jan. 3, 2022) (Opp. 7), this Court *should* find that Smith & Wesson removed this action "solely" under the general removal statute because removal under the federal-officer statute is contrary to established case law. *See supra* Section I.

Instead, Smith & Wesson misleadingly asserts that "Plaintiffs' core claim [is] that Smith & Wesson violated the NFA" and oversimplifies the remedy sought by asserting that Plaintiffs "seek an order requiring Smith & Wesson to disclose that the M&P rifle is an NFA weapon." (Opp. 12, 13.) Contrary to the Opposition, Plaintiffs' 336-paragraph Complaint includes only 14 paragraphs—nine unique—that allege, as an *alternative* theory of liability, that Smith & Wesson deceptively marketed its M&P rifles without disclosing that they are "NFA weapons." (Mot. 4.) These allegations do not amount to a "claim," let alone a "core" one, and instead lend further support for Plaintiffs' state-law claims. (*See* Compl. ¶¶ 168, 174 (one of multiple theories under Count I); 189–91 (same under Count II); 212–14 (same under Count III); 238, 240–41 (same under Count IV).) Thus, the allegations do not provide a sufficient basis for federal-question jurisdiction. *See Christianson* v. *Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988); *see also Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 194–95 (2d Cir. 2005) ("The question is whether at least one federal aspect of [plaintiff's] complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory.").

Smith & Wesson's reliance on the artful pleading doctrine fares no better. That doctrine does not apply here because none of Plaintiffs' state-law claims is a "disguised" federal claim. *See City of Gary, Ind. ex rel. King* v. *Smith & Wesson Corp.*, 94 F. Supp. 2d 947, 952 (N.D. Ind. 2000). Plaintiffs' statutory and common-law claims under Illinois law do not raise any federal question necessary for recovery, and Plaintiffs did not fail to plead any facts indicating federal jurisdiction. *See Empress River Casino Corp.* v. *Loc. Unions No. 9 & 176, Int'l Bhd. of Elec. Workers*, 1994 WL 262075, at *2, 3 (N.D. Ill. June 10, 1994) ("[T]he Complaint relies exclusively on the Illinois Uniform Deceptive Trade Practices Act. Thus, there is no federal issue on the face of the Complaint, and apparently, no removal jurisdiction."). Smith & Wesson admits as much by asking

this Court to "cast aside" Plaintiffs' state-law claims so that "[a]ll that is left is strict liability conditioned on a finding that Smith & Wesson violated the NFA." (Opp. 10.) But that amounts to a request to "cast aside" the Complaint in its entirety and replace it with a fictional one.

Pointing to the well-established doctrine that a federal court must consider whether a plaintiff's *federal* claim is "insubstantial, implausible, or foreclosed" if the plaintiff seeks to assert *federal* jurisdiction over related state-law claims, Smith & Wesson argues that the inverse applies—a federal court must also consider whether a plaintiff's *state-law* claims *filed in state court* are insubstantial, implausible, or foreclosed when a defendant removes a case based on purported federal-question jurisdiction. (Opp. 8.) Not only would this turn the law on its head, it is completely unprecedented. The case on which Smith & Wesson relies, *Illinois Public Risk Fund* v. *Purdue Pharma L.P.*, 2019 WL 3080929 (N.D. Ill. July 15, 2019), actually *declined* to assess the merits of plaintiffs' state-law claims. 2019 WL 3080929, at *1, 3. The court held that plaintiff's complaint did not necessarily raise a federal issue under *Grable* because mere "reference to federal law does not suggest that a federal issue will inevitably arise," and it credited plaintiff's argument that "Illinois law imposes duties independent of the defendants' obligations to comply with federal law." *Id.*, at *2. The court also did not consider, let alone resolve, whether the state-law claims were frivolous; its only discussion of that topic was dicta. *Id*. *Purdue Pharma* in no way suggests that *Grable* requires this Court to review the merits of Plaintiffs' state-law claims.

In any event, Plaintiffs' state-law claims are valid, as demonstrated by cases filed across the country in which analogous claims have survived motions to dismiss. (Mot. 11.) Accordingly, Smith & Wesson's reliance on *Young* v. *Bryco Arms*, 213 Ill. 2d 433 (2004), is misplaced. (Opp. 8.) In *Young*, the Illinois Supreme Court found that there was no causation due to "numerous unforeseeable intervening criminal acts by third parties" (Opp. 8), including the fact that a gun that

7

killed one of the plaintiffs "passed through at least eight sets of hands before it reached [the shooter]." 213 Ill. at 455. Here, the chain of causation is clear. Plaintiffs specifically allege that Crimo III purchased the firearm at the point of sale; Smith & Wesson sought out this sale through its marketing and advertising of the firearm, which has become the weapon of choice for mass shooters; and Crimo III was exposed to Smith & Wesson's marketing on the website of Bud's Gun Shop (and, on information and belief, through other means), which influenced him to buy the firearm and select it to use on July 4.[7] (Compl. ¶¶ 16, 130–31.) Regardless, Smith & Wesson's causation arguments (based on Illinois case law), while erroneous, should be addressed by state courts with jurisdiction after the parties have had a full opportunity to brief the relevant issues, not resolved on a misguided removal petition.

### 2. No Issue of Federal Law Is "Actually Disputed" in the Complaint.

Smith & Wesson fails to show that the Complaint includes any actually disputed federal issue. To be "actually disputed," the issue must present "a nearly pure issue of law" and not be "fact-bound." *Empire Healthchoice Assurance Inc.* v. *McVeigh*, 547 U.S. 677, 681 (2006). Here, whether Smith & Wesson deceptively marketed its products by omitting references to their status under the NFA is necessarily "fact-bound" because the question involves issues regarding weapon design and operation. *See Bennett* v. *Southwest Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (remanding to state court where there was "a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law").

---

[7] *City of Chicago* v. *Beretta U.S.A. Corp.*, 213 Ill. 2d 351 (2004), is inapposite. (Opp. 8–9.) There, the City of Chicago asserted a public nuisance claim and was one step further removed in the causal chain than Plaintiffs here, because it sought compensation for *the City's* costs to treat individuals harmed by gun violence, not compensation for those individuals. *Beretta*, 213 Ill. 2d 351, 394–414.

### 3. The Complaint Does Not Raise a "Substantial" Federal Issue.

Smith & Wesson also suggests that there is a substantial federal issue because "Plaintiffs seek to have a state court re-define 'machinegun' contrary to federal regulations." (Opp. 13.) This assertion, too, is manifestly incorrect. Plaintiffs allege only that the Smith & Wesson M&P assault rifle falls under the existing definition of a machinegun. (Compl. ¶¶ 241, 264.) In any event, this allegation is not "substantial," as it is one of multiple theories advanced in Plaintiffs' state-law claims; and it has no "significance for the federal system" that would confer federal jurisdiction, as evidenced by the fact that Congress has provided no federal remedy to victims of gun violence under the NFA.[8] *See Merrell Dow Pharm. Inc.* v. *Thompson*, 478 U.S. 804, 810 (1986).

### 4. Exercising Federal Jurisdiction Would Disrupt the Federal-State Balance.

Where, as here, Plaintiffs bring classic state-law consumer protection claims that fall within the state's traditional police power, removal to federal court would disrupt the federal-state balance. *Soto* v. *Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 313 (Conn. 2019). Smith & Wesson urges this Court to exercise federal jurisdiction to "resolve whether the M&P rifle is a 'machinegun' and whether Smith & Wesson violated the NFA." (Opp. 14.) But the exercise of federal jurisdiction over these state-law claims would fundamentally undermine the division of labor between state and federal courts. And state-law issues that may implicate whether a firearm product is covered by the NFA or the Gun Control Act are regularly litigated in state courts. *See, e.g.*, *Goldstein* v. *Earnest*, No. 37-2020-00016638, slip op. at *3–5 (Cal. Super. Ct. San Diego

---

[8] Smith & Wesson's reliance on *New York* v. *Arm or Ally, LLC*, 2022 WL 17496413 (S.D.N.Y. Dec. 8, 2022), is misplaced. (Opp. 11.) That case involved a substantial and threshold federal question—whether "ghost guns" met the federal statutory definition of "qualified product" under 15 U.S.C. § 7903(4). If the firearms did not meet the definition, then the plaintiff could not bring the asserted claim. No analogous determination is required here. The claims in the Complaint allege a violation of federal law as an alternative theory in support of state-law causes of action. The federal law issue is not a substantial and threshold one; it may never need to be settled to resolve the cases. (Mot. 8–13.)

Cnty. July 2, 2021) (holding that plaintiffs sufficiently alleged that Smith & Wesson's M&P rifle was a machinegun under the NFA).[9]

## III. SMITH & WESSON'S PREEMPTION ARGUMENT IS MERITLESS.

Plaintiffs' state-law claims are not preempted by the NFA and APA because (1) false, misleading, unlawful, and deceptive marketing practices are outside the scope of the NFA; and (2) the NFA does not supply a private right of action. (Mot. 13–14.) Smith & Wesson tries to concoct, from disparate strands of the APA and NFA, a federal private right of action that would preempt state-law claims, but it does not cite a single case in support. (Opp. 14–15.) Moreover, Smith & Wesson continues to ignore case law directly holding that the NFA does not provide a private right of action. *Jefferson* v. *Amadeo Rossi, S.A.*, 2002 WL 32154285, at *5 (E.D. Pa. Jan. 22, 2002).

## IV. PLAINTIFFS SHOULD BE AWARDED ATTORNEYS' FEES AND EXPENSES.

Smith & Wesson disregarded controlling and clear case law, misrepresented the claims pled and relief sought in the Complaint (including through misleading quotations), and advanced arguments that courts have routinely rejected. (Mot. 15.) There was no "objectively reasonable basis for removing the case to federal court," *Blanco* v. *Bath & Body Works, LLC*, 2022 WL 1908980, at *4 (N.D. Ill. June 3, 2022), and an award of attorneys' fees and expenses pursuant to 28 U.S.C. § 1447(c) is warranted. *Lott* v. *Pfizer Inc.*, 492 F.3d 789, 793 (7th Cir. 2009).

## CONCLUSION

For the foregoing reasons, the Roberts Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Remand and award fees and costs.

---

[9] *Available at* https://brady-static.s3.amazonaws.com/Minute-Order-7-2-21-S0499865.PDF. *See also Tisdale* v. *Pagourtzis*, 2020 WL 7170491, at *5 (S.D. Tex. 2020) (holding that neither "substantiality" nor "federal-state balance" prong of *Grable* test was met in case concerning regulation of ammunition under Gun Control Act); *Apolinar* v. *Polymer80, Inc.*, 2022 Cal. Super. LEXIS 2591, at *3–4 (Cal. Super. Ct. L.A. Cnty. Feb. 2, 2022) (denying Nevada ghost gun manufacturer's motion-to-dismiss argument that its weapons did not qualify as firearms under Gun Control Act.).

10

Dated: February 3, 2022

Respectfully Submitted,

 /s/ *H. Christopher Boehning*

**EVERYTOWN LAW**
Alla Lefkowitz
Alison Barnes (admitted *pro hac vice*)
P.O. Box # 14780
Washington D.C. 20044
(mailing address)
Phone: (202) 545-3257
alefkowitz@everytown.org
abarnes@everytown.org

**EVERYTOWN LAW**
Krystan Hitchcock (admitted *pro hac vice*)
Laura Keeley (admitted *pro hac vice*)
450 Lexington Ave.
P.O Box # 4184
New York, NY 10017
(mailing address)
Phone: (646) 324-8218
khitchcock@everytown.org
lkeeley@everytown.org

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
H. Christopher Boehning (admitted *pro hac vice*)
Jeffrey J. Recher (admitted *pro hac vice*)
Carly Lagrotteria (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
(mailing address)
Phone: (212) 373-3700
cboehning@paulweiss.com
jrecher@paulweiss.com
clagrotteria@paulweiss.com

**ROMANUCCI & BLANDIN, LLC**
Antonio M. Romanucci
Gina A. DeBoni
David A. Neiman
Michael E. Holden
321 North Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
gad@rblaw.net
dneiman@rblaw.net
mholden@rblaw.net

**HUNT LAW PC**
Keith L. Hunt
Delaney A. Hunt
2275 Half Day Rd
Suite 126
Bannockburn, IL 60015
Phone: (312) 558-1300
khunt@huntpclaw.com
dhunt@huntpclaw.com

*Attorneys for Plaintiffs*