# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KEELY ROBERTS, individually and as parent and next friend of C.R. and L.R., and JASON ROBERTS, individually and as parent and next friend of C.R. and L.R., | Lead Case No. 1:22-cv-06169 |
| | Related Cases: 1:22-cv-06171 |
| *Plaintiffs,* | 1:22-cv-06178 |
| | 1:22-cv-06181 |
| v. | 1:22-cv-06183 |
| | 1:22-cv-06185 |
| SMITH & WESSON BRANDS, INC., *et al.,* | 1:22-cv-06186 |
| | 1:22-cv-06190 |
| *Defendants.* | 1:22-cv-06191 |
| | 1:22-cv-06193 |
| | 1:22-cv-06359 |
| | 1:22-cv-06361 |

Lead Case No. 1:22-cv-06169

Related Cases: 1:22-cv-06171
1:22-cv-06178
1:22-cv-06181
1:22-cv-06183
1:22-cv-06185
1:22-cv-06186
1:22-cv-06190
1:22-cv-06191
1:22-cv-06193
1:22-cv-06359
1:22-cv-06361

Lead Case Removed from Case No. 22 LA 00000487 in the Circuit Court of Lake County, Illinois

Hon. Steven C. Seeger

**DECLARATION OF ALLA LEFKOWITZ IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

I, Alla Lefkowitz, declare as follows:

1.       I am an attorney of record for Keely Roberts, Jason Roberts, Amelia Tenorio, Antonio Melgar, Michael Zeifert, Christine Zeifert, Ricardo Toledo, Petra Toledo, Josefina Toledo, Alejo Toledo, Lauren Bennett, Michael Bennett, Terri E. Bennett, Jeffrey Bennett, Deborah Samuels, Elliot Samuels, Peter Straus, Jonathan Straus, Lorena Rebollar Sedano, Sylvia Vergara, Lizet Montez, Gabriela Vergara, Mirna Rodriguez, Oscar Sanchez and Bruce Sundheim (the "*Roberts* Plaintiffs") in these consolidated actions.

2.       I have been licensed to practice law in the State of New York since 2011 and in Washington D.C. since 2017. My license has never been suspended or revoked. I was admitted to

the general bar in the Northern District of Illinois in December 2022 and to the Seventh Circuit in November 2023.

3.      I submit this Declaration in support of Plaintiffs' Motion for Attorneys' Fees. The facts stated in this Declaration are based on my personal knowledge, my review of Everytown Law's records maintained in the ordinary course of its business, and information provided by Everytown Law personnel.

4.      The *Roberts* Plaintiffs are requesting attorneys' fees for work performed by three Everytown Law attorneys: Alla Lefkowitz, Alison Barnes, and Carly Lagrotteria.

5.      Everytown Law regularly represents victims of gun violence as plaintiffs in wrongful death and personal injury litigation. Our cases have resulted in ground-breaking settlements and judicial precedent throughout the country. This is a highly specialized area of law due to the existence of the Protection of Lawful Commerce in Arms Act ("PLCAA"), a federal law on which defendants in the gun industry regularly rely, as well as other firearm-specific litigation statutes.

6.      I graduated from Duke Law School in 2010. From 2011-2013, I worked as an associate at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP in New York, primarily in the Litigation group. From 2014-2017, I worked at the Brady Center to Prevent Gun Violence as a Staff Attorney and then Senior Staff Attorney. Since 2017, I have worked at Everytown Law, first as a Deputy Director, then as a Director of Affirmative Litigation, then as the Senior Director of Affirmative Litigation, and now as Managing Director of Affirmative Litigation. I am one of the founding attorneys at Everytown Law. Through my work, I have become one of the foremost experts in civil firearms litigation. In addition to having litigated dozens of such cases, I write on the subject and am regularly asked to speak on panels about PLCAA and firearms litigation.

7. My colleague Alison Barnes is an attorney of record for the *Roberts* Plaintiffs and was admitted *pro hac vice* by this Court on January 30, 2023. Ms. Barnes graduated from the University of Virginia Law School in 1997 and is the Deputy Director of Affirmative Litigation at Everytown Law, where she has worked since 2022. Before working at Everytown Law, she was a partner at Robbins, Russell, Englert, Orseck & Untereiner LLP for more than a decade. Prior to working in private practice, Alison served as a trial attorney for the U.S. Department of Justice for more than four years.

8. My colleague Carly Lagrotteria is an attorney of record for the *Roberts* Plaintiffs. She was admitted *pro hac vice* by this Court on December 28, 2022. She then was admitted to the general bar in the Northern District of Illinois in October 2023 and to the Seventh Circuit in March 2024. Ms. Lagrotteria graduated from Fordham Law School in 2019 and is Counsel on the Affirmative Litigation team at Everytown Law, where she has worked since 2023. Before starting at Everytown Law, she worked as an associate at Paul, Weiss, Rifkind, Wharton & Garrison LLC in New York, NY from 2019-2023.

9. Everytown Law took a lead role in researching and drafting the complaints for the *Roberts* Plaintiffs, including undertaking the legal research to develop the claims and the factual investigation to support them. No Everytown Law attorney is seeking reimbursement for any work at that stage.

10. Everytown Law attorneys, as well as attorneys from Romanucci & Blandin, LLC, supported efforts by co-counsel at Paul, Weiss (together, "*Roberts* Co-Counsel") in drafting the *Roberts* Plaintiffs' Motion to Remand ("Motion to Remand") (Dkt. 26) and the Reply Brief in Further Support of *Roberts* Plaintiffs' Motion to Remand ("Reply Brief") (Dkt. 51), and took the lead on drafting the Plaintiffs' Motion to Lift the Stay Pending the Appeal ("Motion to Lift the

Stay") (Dkt. 76) that were filed before this Court. This included (i) corresponding with co-counsel about strategy, case research, local rules and various versions of the briefing; (ii) undertaking the necessary case and statutory research to address the multiple issues raised by Defendants Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson, Inc. (collectively, "Smith & Wesson") in the Notice of Removal and Opposition to the Motion to Remand; (iii) drafting an opposition brief to Smith & Wesson's Motion to Stay (Dkt.71) and then updating and transforming that brief into the Motion to Lift the Stay which was ultimately filed; (iv) reviewing and editing the Motion to Remand and Reply Brief in order to contribute substantive revisions; and (v) assisting in the finalization and filing of these three briefs. Throughout the drafting process, the *Roberts* Co-Counsel were in regular contact to avoid duplicative work and confirm that all tasks were efficiently distributed amongst the firms.

11.     On appeal, after the Seventh Circuit directed plaintiffs in the *Turnipseed* action (No. 22-cv-6359) and the *Chupack* action (No. 22-cv-6361) (together, the "*Turnipseed* Plaintiffs") and the *Roberts* Plaintiffs to submit one brief, Everytown Law attorneys supported efforts by *Roberts* Co-Counsel and counsel for the *Turnipseed* Plaintiffs in drafting the Brief of Plaintiffs-Appellees ("Seventh Circuit Brief") that was filed before the Seventh Circuit on January 23, 2024. This included (i) corresponding with co-counsel about strategy, case research, the Circuit Rules of the United States Court of Appeals for the Seventh Circuit, and drafting of the Seventh Circuit Brief; (ii) undertaking the necessary case research to address the multiple issues raised by Smith & Wesson; (iii) reviewing and editing the Seventh Circuit Brief in order to contribute substantive revisions; and (v) assisting in the finalization and filing of the brief.

12.     After consulting with *Roberts* Co-Counsel and counsel for the *Turnipseed* Plaintiffs, I was chosen as the attorney to argue on behalf of all Plaintiffs before the Seventh

Circuit. I sought admission to, and was admitted to, the Seventh Circuit in November 2023. I filed an appearance before the Seventh Circuit on November 10, 2023, and argued the appeal on April 4, 2024. I undertook the following necessary work to prepare for the argument: (i) closely reviewing the briefing filed before this Court and the Seventh Circuit; (ii) closely reviewing the caselaw relevant to the multiple issues raised by Smith & Wesson before this Court and the Seventh Circuit; (iii) conducting additional legal research; (iv) meeting with *Roberts* Co-Counsel and counsel for the *Turnipseed* Plaintiffs to discuss strategy for the argument; (iv) participating in multiple moot courts with *Roberts* Co-Counsel, counsel for the *Turnipseed* Plaintiffs, and attorneys at Everytown Law; and (vi) preparing an outline for the oral argument. Ms. Lagrotteria worked closely with me during that preparation and attended the oral argument with me to serve as the second chair. Ms. Lagrotteria and I are the only Everytown attorneys seeking reimbursement for any work at this stage.

13. Everytown Law attorneys kept contemporaneous records of their time spent working on this matter on the software that Everytown Law uses to record employee time in the ordinary course of business.

14. Everytown Law has exercised billing discretion in pulling together this request. None of the Everytown Law attorneys have included any time spend on: (i) preparing the complaints, (ii) completing the affidavit for this application or assisting with the Motion for Attorneys' Fees; (iii) cite-checking; or (iv) participating in any internal meetings or meeting with *Roberts* Co-Counsel and/or counsel for the *Turnipseed* Plaintiffs. In addition, in order to avoid charging for any potentially redundant work, Everytown Law is only seeking reimbursement for work done by Ms. Barnes on the remand briefing before this Court, for work done by Ms. Lagrotteria on the Motion to Lift the Stay, and for work done by Ms. Lagrotteria and me on briefing

and argument before the Seventh Circuit. In so doing, we have discounted multiple dozens of hours of work done by the Everytown attorneys of record in these cases. We have also not included the time of any Everytown Law paralegal or administrative staff, or any consultation that we engaged in with other Everytown Law attorneys who are not attorneys of record in these cases.

15.     The time entries for which Everytown Law attorneys are seeking an award of attorneys' fees are presented in **Exhibit A** in chronological order, showing the date, billing attorney, task performed, and time expended for all work. In total, Everytown Law attorneys are seeking an award for 123.1 hours of time spent performing legal work on this matter. This figure encompasses 44.9 hours of my time, 61.5 hours of Ms. Lagrotteria's time, and 16.7 hours of Ms. Barnes' time.

16.     As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge our clients attorneys' fees. However, our clients in these cases have authorized Everytown Law to seek and retain an award of attorneys' fees and costs from the Court to the extent such an award is authorized by law. *See Wisconsin v. Hotline Indus. Inc.*, 236 F.3d 363, 365 (7th Cir. 2000) (confirming that reimbursement under Section § 1447(c) is appropriate for salaried attorneys, including those at non-profits). The reasonable hourly rate for my and Ms. Barnes' time in these cases is $500/hour. The reasonable hourly rate for Ms. Lagrotteria in these cases is $375/hour. These rates are based on a number of factors, including our experience and expertise, the complexity of the issues involved, the market rate for attorneys in the Chicago area with similar skills, and the rates for Everytown Law attorneys of comparable experience affirmed as reasonable by courts considering fee applications on other matters.

17.     For example, in 2022, *in Yanas et al v. Pagourtzis et al.*, Case No. CV-0081158 (Galveston County, Texas), another case against a gun industry defendant pertaining to a mass

shooting, the court upheld Everytown Law's request for $450/hour for my time, as well as requests from $400/hour to $300/hour for more junior attorneys. *See* **Exhibit B**. In compiling this Declaration, I also consulted with co-counsel from Romanucci & Blandin, LLC and counsel representing the *Turnipseed* Plaintiffs from Edelson PC who are knowledgeable about the billing rates of Chicago-based attorneys with similar levels of experience.

18.     The total amounts for Everytown Law attorneys sought in the Motion are set forth in the chart below.

| Name | Rates | Hours | Lodestar Amount |
|------|-------|-------|-----------------|
| Alla Lefkowitz | $500 | 44.9 | $22,450.00 |
| Alison Barnes | $500 | 16.7 | $8,350.00 |
| Carly Lagrotteria | $375 | 61.5 | $23,062.50 |
| Total Lodestar Amount: | | | **$53,862.50** |

19.     I have arrived at this amount by multiplying the time that each of us worked by our respective hourly rates. In my opinion, these expenses (in addition to the expenses sought by *Roberts* Co-Counsel and counsel for the *Turnipseed* Plaintiffs) are a reasonable and necessary amount of attorneys' fees in order to develop, draft, and argue the Plaintiffs' challenge to Smith & Wesson's removal and appeal in this matter given the complexity of the issues involved and the time spent.

20.     In addition to Everytown Law attorneys' hourly fees, as noted above, Ms. Lagrotteria and I travelled to Chicago for the Seventh Circuit argument (for me to argue and for Ms. Lagrotteria to second chair). We are seeking reimbursement for $1,616.39 in travel costs that Everytown Law incurred from April 3-4, 2024. This requested cost encompasses $948.28 in airfare, $161.33 in Uber costs, and $506.78 in hotel costs. *See* **Exhibit C**. This amount does not reflect the full amount of travel costs incurred during our trip.

21.     Everytown Law thus seeks reimbursement for $1,616.39 in costs, and $53,862.50 in attorneys' fees. Altogether, this is a total of $55,478.89 for which Everytown Law seeks reimbursement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 10, 2024                                    Respectfully Submitted,


                                                       /s/ Alla Lefkowitz
                                                       Alla Lefkowitz

# Exhibit A

**Everytown Law**
*Time Entries Submitted for Reimbursement*

| Date | Attorney | Hrs | Task Performed |
|------|----------|-----|----------------|
| 11/18/22 | Barnes | 1 | Review S&W motion for reassignment & consolidation and draft response |
| 11/23/22 | Barnes | 1 | Review/edit portion of draft motion to remand |
| 11/28/22 | Barnes | 3 | Review regs and commentary to anticipate arguments for motion to remand |
| 12/2/22 | Barnes | 4 | Research for and editing of draft motion to remand and communications with co-counsel re: same. |
| 01/23/23 | Barnes | 1.5 | Review S&W's brief in opposition to motion to remand |
| 01/30/23 | Barnes | 1.2 | Review and provide comments on draft reply brief in support of motion to remand |
| 020/1/23 | Barnes | 0.5 | Review caselaw relating to reply brief |
| 02/02/23 | Barnes | 1.7 | Review/edit revised draft reply brief ISO remand motion (0.9); review key caselaw relating to reply brief (0.8) |
| 02/03/23 | Barnes | 1.4 | Review draft reply brief from Turnipseed counsel (0.8); final review of reply (0.6) |
| 05/11/23 | Barnes | 1 | Review supplemental caselaw and internal communications regarding potential notice to court |
| 05/12/23 | Barnes | 0.4 | Edit notice of supplemental authority |
| 10/20/23 | Lagrotteria | 2.5 | Research issues pertaining to stay during appeal |
| 10/23/23 | Lagrotteria | 4 | Drafted response to S&W's motion to lift the stay; additional research for motion |
| 10/30/23 | Lagrotteria | 5 | Research for and continued drafting motion to lift stay |
| 11/01/23 | Lagrotteria | 4 | Research for motion to lift the stay |
| 11/02/23 | Lagrotteria | 3 | Incorporated additional edits to motion to lift the stay |
| 11/06/23 | Lagrotteria | 2.5 | Additional work on updating and incorporating edits to motion to lift the stay |
| 11/07/23 | Lagrotteria | 6.5 | Reviewed/incorporated edits from Turnipseed counsel/created exhibits of cases for motion to lift the stay |
| 11/08/23 | Lagrotteria | 2 | Additional edits to motion to lift stay before sharing with co-counsel and finalized motion for filing |
| 11/09/23 | Lagrotteria | 0.5 | Reviewed docketing statement from S&W and drafted proposed updated jurisdictional statement for 7th Circuit opposition brief |
| 01/05/24 | Lagrotteria | 1.5 | Reviewed PW draft of 7th Circuit opposition brief |
| 01/05/24 | Lefkowitz | 1.2 | Review and revise draft of 7th Circuit opposition brief |
| 01/09/24 | Lefkowitz | 0.2 | Review motion for extension to submit 7th Circuit opposition brief |
| 01/11/24 | Lefkowitz | 3 | Review and revise draft of 7th Circuit opposition brief |
| 01/16/24 | Lefkowitz | 3 | Review/edit 7th Circuit opposition brief |
| 01/18/24 | Lagrotteria | 3.5 | Additional edits to 7th Circuit opposition brief; prepared, edited, filed 26.1s |
| 01/21/24 | Lefkowitz | 1.5 | Reviewing and revising 7th Circuit opposition brief |
| 01/22/24 | Lefkowitz | 3.5 | Review/edit 7th Circuit opposition brief; finalization of brief |
| 03/23/24 | Lefkowitz | 5 | Preparing for oral argument: reviewing briefs, pleadings and other filings |
| 03/25/24 | Lagrotteria | 2 | Preparing for oral argument: reviewing cases and additional research |
| 03/25/24 | Lefkowitz | 2.5 | Preparing for oral argument: reviewing briefs & cases |
| 03/26/24 | Lagrotteria | 1.5 | Preparing for oral arguments: reviewing cases and additional research (0.5); moot court with Roberts co-counsel (1.0) |
| 03/26/24 | Lefkowitz | 3 | Preparing for oral arguments: reviewing briefs and cases (2.0); moot court with Roberts co-counsel (1.0) |
| 03/27/24 | Lagrotteria | 2.5 | Preparing for oral argument: moot court w/ Roberts co-counsel and add't Everytown attorneys (1.0); additional research (1.5) |
| 03/27/24 | Lefkowitz | 2.5 | Preparing for oral argument: moot court w/ Roberts co-counsel and add't Everytown attorneys (1.0); reviewing cases (1.5) |
| 03/28/24 | Lagrotteria | 3 | Preparing for oral argument: reviewing cases and additional research |
| 03/28/24 | Lefkowitz | 6.5 | Preparation for oral argument: Reviewing cases |
| 04/01/24 | Lagrotteria | 3.5 | Preparing for oral argument: moot court with Roberts co-counsel and Turnipseed counsel (1.0); reviewing cases and additional research (2.5) |
| 04/01/24 | Lefkowitz | 4.5 | Preparing for oral argument: moot court with Roberts co-counsel and Turnipseed counsel (1); prep for moot court/ working on outline (2); reviewing cases (1.5) |
| 04/02/24 | Lagrotteria | 2.5 | Preparing for oral argument: additional research and reviewing cases |

1

**Everytown Law**

*Time Entries Submitted for Reimbursement*

| Date | Attorney | Hrs | Task Performed |
|------|----------|-----|----------------|
| 04/02/24 | Lefkowitz | 5.5 | Preparing for oral argument: reviewing cases and briefs; working on outline |
| 04/03/24 | Lagrotteria | 3 | Preparing for oral argument: additional research and reviewing cases; conferred with J. Humerick, A. Haier and A. Lefkowitz re: last minute questions for argument |
| 04/03/24 | Lefkowitz | 7.5 | Preparing for oral argument: reviewing cases, working on outline; in frequent communication with J. Humerick, A. Haier and C. Lagrotteria re: last minute questions for argument |
| 04/04/24 | Lagrotteria | 2 | Attended Seventh Circuit oral argument and second chaired same |
| 04/04/24 | Lefkowitz | 2 | Attended Seventh Circuit oral argument and argued same |

# Exhibit B

Filed
4/1/2022 5:04 PM
Dwight D. Sullivan
County Clerk
Galveston County, Texas

**CAUSE NO. CV-0081158**

|  |  |
|---|---|
| ROSIE YANAS and CHRISTOPHER STONE, individually and as next friends of CHRISTOPHER JAKE STONE, | COUNTY COURT AT LAW |
| Plaintiffs, | |
| vs. | GALVESTON COUNTY, TEXAS |
| ANTONIOS PAGOURTZIS and ROSE MARIE KOSMETATOS | COURT NO. 3 |
| Defendants. | |

## PLAINTIFFS' AMENDED APPLICATION FOR ATTORNEYS' FEES AND COSTS

TO THE HONORABLE JUDGE EWING:

Plaintiffs[1] in the above-styled case file this amended application for the recovery of their attorneys' fees and costs incurred in responding to Tennessee Defendants' Rule 91a Motion to Dismiss[2] and the resulting mandamus petitions before the Fourteenth District Court of Appeals and the Supreme Court of Texas; and would respectfully show the Court as follows:

---

[1] Rosie Yanas and Christopher Stone (individually and as next friends of Christopher Jake Stone); William ("Billy") Beazley and Shirley Beazley (individually and as next friends of T.B., a minor); Autumn Tisdale (individually and as a representative of the estate of Cynthia Tisdale); William Tisdale, Jr. (individually and as a representative of the estate of William R. Tisdale, Sr.); Chase Yarbrough, Donna Yarbrough and Troy Yarbrough; and Plaintiffs-Intervenors Mark McLeod and Gail McLeod (individually and as next friends of Aaron Kyle McLeod); Pamela Stanich (individually and as next friend of Jared Conard Black); Shannan Claussen (individually and as next friend of Christian Riley Garcia); Clayton Horn; Abdul Aziz and Farah Naz (individually and as next friends of Sabika Aziz Sheikh); Flo Rice; and Rhonda Hart (individually and as a representative of the estate of Kimberly Vaughan).

[2] The Tennessee Defendants are Luckygunner, LLC, Red Stag Fulfillment, LLC, MollenhourGross, LLC, Jordan Mollenhour, and Dustin Gross.

**I.**
**LEGAL AUTHORITY FOR AWARD OF ATTORNEYS' FEES**

1.      Under Texas law, a party may recover their attorney's fees when allowed by statute or contract.[3] Texas Rule of Civil Procedure 91a.7 provides, in relevant part, "[T]he court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. Any award of costs or fees must be based on evidence."[4]

2.      The prevailing party is also entitled to recover appellate costs and fees. *Weizhong Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 188 (Tex. App. 2015—Houston [14th Dist.]); s*ee also Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 147-48 (Tex. App. 2011—Dallas [5th Dist.]) ("It is well-settled that where attorney's fees are recoverable, the award may include appellate attorney's fees."); *Neal v. SMC Corp.*, 99 S.W.3d 813, 818 (Tex. App. 2003—Dallas [5th Dist.])("The trial court's award of attorney's fees may include appellate attorney's fees.").

3.      As the prevailing parties concerning the Tennessee Defendants' Rule 91a Motion to Dismiss and the corresponding appeals, Plaintiffs are entitled to the recovery of their attorneys' fees and costs.

---

[3] *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp*., 299 S.W.3d 106, 120 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006)).

[4] The *Yanas*, *Beazley*, and *Tisdale* cases were filed in 2018. At the time they were filed, an earlier version of Rule 91a.7 containing mandatory language was in effect: "Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award."

## II.
## BACKGROUND

4. On January 6, 2021, the Tennessee Defendants filed a Rule 91a Motion to Dismiss in the instant case, as well as in *Tisdale et al. v. Pagourtzis et al*., Case No. PR-0078972-A, and *Yarbough et al. v. Pagourtzis et al.*, Cause No. CV-0086848.

5. On February 10, 2021, Plaintiffs filed opposition briefs in response to the Motion to Dismiss in each of the aforementioned cases.

6. On March 3, 2021, this Court and the Probate Court of Galveston County entered an Amended Order consolidating all of the aforementioned cases into one case before this Court under Cause No. 0081158.

7. On March 8, 2021 the Tennessee Defendants filed three separate reply briefs in support of their motions to dismiss, even though the cases had been consolidated.

8. On March 10, 2021, a hearing was conducted on the Tennessee Defendants' Rule 91a Motion to Dismiss.

9. On March 18, 2021, the Court entered an Order denying the Tennessee Defendants' Rule 91a Motion to Dismiss in its entirety. The Court further ordered that "Plaintiffs, as the prevailing party, are entitled to all costs and reasonable and necessary attorney fees incurred as a result of the instant motion, pursuant to Texas Rule of Civil Procedure 91a.7, payable by Luckygunner, LLC, Red Stag Fulfillment, LLC, MollenhourGross, Jordan Mollenhour and Dustin Gross." *See* Exhibit A, attached hereto.

10. In the Court's Order dated March 18, 2021, the Court instructed Plaintiffs to submit evidence of their reasonable and necessary attorneys' fees and costs within 30 days of the Order's entry. *See Id*. The Plaintiffs originally filed their application for attorneys' fees and costs on April 16, 2021.

3

11.     On April 13, 2021, the Tennessee Defendants filed a Petition for Writ of Mandamus and an Emergency Motion to Stay Proceedings in the Court of Appeals for the Fourteenth District at Houston, Texas. The Petition for a Writ of Mandamus was an appeal of this Court's decision on the Tennessee Defendants' Rule 91a motion and raised no arguments relating to other pending motions. On April 22, 2021, Plaintiffs filed a response to Emergency Motion to Stay Proceedings. On April 23, 2021, the Tennessee Defendants filed a Reply in Support of Opposed Motion to Stay Proceedings.

12.     On May 12, 2021, the Fourteenth Court of Appeals denied the Tennessee Defendants' Petition for Writ of Mandamus and dismissed the Emergency Motion to Stay as moot. *In re LuckyGunner LLC*, No. 14-21-00194-CV, slip op. at 1 (Tex. App.—Houston [14th Dist.] May 12, 2021, orig. proceeding) (per curiam) (mem. op.). *See* Exhibit B, attached hereto.

13.     On May 27, 2021, the parties filed a Rule 11 agreement with this Court, wherein Plaintiffs agreed to stay all proceedings in the trial court pending a decision by the Texas Supreme Court on a forthcoming motion for a stay or proceedings by the Tennessee Defendants.

14.     On June 3, 2021, the Tennessee Defendants filed a Petition for Writ of Mandamus and a Motion for Temporary Relief and Stay of Proceedings in the Texas Supreme Court. *In re Luckygunner,* Cause No. CV-0081158. The mandamus petition sought to overturn this Court's decision on the Rule 91a Motion to Dismiss. On June 11, 2021, Plaintiffs filed a response to the Motion for Temporary Relief and Stay of Proceedings. On June 16, 2021, the Tennessee Defendants filed a Reply in Support of Motion for Temporary Relief and Stay of Proceedings.

15.     On July 9, 2021, the Texas Supreme Court requested that Plaintiffs file a response to the Petition for Writ of Mandamus. *See* Exhibit C, attached hereto. On August 9, 2021, Plaintiffs

filed a Response to the Petition for Writ of Mandamus. On August 24, 2021, the Tennessee Defendants filed a Reply in Support of Petition for Review.

16.    On September 24, 2021, the Texas Supreme Court requested that the parties file briefs on the merits. *See* Exhibit D, attached hereto. On November 24, 2021, the Tennessee Defendants filed a Brief on the Merits in the Texas Supreme Court. On December 21, 2021, Plaintiffs filed a Merits Brief. On January 21, 2022, the Tennessee Defendants filed a Reply Brief on the Merits.

17.    On February 18, 2022, the Texas Supreme Court denied the Tennessee Defendant's Petition for Writ of Mandamus and the Motion for Temporary Relief and Stay of Proceedings. *See* Exhibit E, attached hereto.

18.    In accordance with this Court's Order dated March 18, 2021, as well as the schedule agreed to at the status conference before the Court on March 11, 2022, Plaintiffs file this Amended Application for Attorneys' Fees and Costs, to include costs and fees incurred due to the Tennessee Defendants' decision to seek mandamus review of this Court's decision on their Rule 91a motion.

### III.
### FEES AND COSTS

19.    When seeking attorney's fees, a claimant must "put on evidence of reasonable hours worked multiplied by a reasonable hourly rate" which "yield[s] a base figure [i.e., the lodestar amount] that can be adjusted by considerations not already accounted for in either the hours worked or the rate."[5] The lodestar "base calculation" (*i.e.*, time x rate) is the "presumptively reasonable" amount of attorney's fees. The claimant bears the burden of providing sufficient evidence on both the time and the rate. "Sufficient evidence includes, at a minimum, evidence of

---

[5] *See Rohrmoos Venture v. UTSW DVA Healthcare*, 578 S.W.3d 469 (Tex. 2019).

(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services."[6]

20.     Plaintiffs calculated their respective fees and costs in accordance with the lodestar method.[7] Pursuant to the Court's Order, Plaintiffs hereby attach evidence of their reasonable and necessary attorneys' fees and costs incurred responding to the Tennessee Defendants' Rule 91a Motion to Dismiss, and the corresponding mandamus petitions. *See* Exhibits F-O.[8]

21.     Pursuant to the above-referenced affidavits, Plaintiffs move the Court to enter an Order awarding the following amounts as reasonable and necessary attorneys' fees and costs:

    a.   Martinez & McGuire, PLLC in the amount of $10,575.00;

    b.   The Law Firm of Alton C. Todd in the amount of $11,109.34;

    c.   Everytown Law in the amount of $97,486.21;[9]

    d.   Tylka Law Center PC in the amount of $9,895.02;

    e.   Apffel Legal, PLLC in the amount of $10,150.00;

    f.   The Chandler Law Firm, LLP in the amount of $8,750.00; and

---

[6] *Id.* at 498.

[7] As reflected in his affidavit, attorney Martin J. Siegel billed at a discounted hourly rate.

[8] As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge its clients attorneys' fees. However, its clients in this case have authorized Everytown Law to seek and retain an award of attorneys' fees and costs from the Court, to the extent such an award is authorized by law. *See* Affidavits of Alla Lefkowitz, Molly Thomas-Jensen, Krystan Hitchcock, and Andrew Nellis (Exs. H-K). While in the context of other fee-shifting provisions, the Texas Supreme Court has held that "incurred" refers to fees and costs that "one becomes liable for," *see Rohrmoos Venture*, 578 S.W.3d at 489, in the context of Rule 91a.7, "incurred" simply refers to those fees that are "associated with [the] challenged cause of action[.]" Notes and Comments, Tex. R. Civ. P. 91a.7.

[9] Because the Tennessee Defendants' Rule 91a motion and corresponding mandamus petitions focused largely on the Protection of Lawful Commerce in Arms Act, a federal immunity law for members of the gun industry, the attorneys for Everytown Law, who have an expertise in this area, took a leading role in responding to the motion, as detailed in the accompanying affidavit of Alla Lefkowitz (Exhibit H).

g. Law Offices of Martin J. Siegel P.C. in the amount of $4,200.00.

22. Thus, the total fees and costs sought are $152,165.57. That total reflects the following fees incurred at each stage of litigating the Rule 91a motion:

a. Trial Court: $75,544.94

b. Fourteenth District Court of Appeals: $5,948.92

c. Texas Supreme Court: $70,671.72

## IV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court enter an order awarding Plaintiffs their reasonable and necessary attorneys' fees and costs, and for such other relief, at law and in equity, to which Plaintiffs are entitled.

DATED: April 1, 2022

RESPECTFULLY SUBMITTED,

THE LAW FIRM OF ALTON C. TODD
Alton C. Todd
State Bar No. 20092000
Seth Mitchell Park
State Bar No. 24102325
312 S. Friendswood Drive
Friendswood, Texas 77546
Phone: 281-992-8633
Fax: 281-648-8633
alton@actlaw.com
set@actlaw.com

*Attorneys for Plaintiff-Intervenor*
*Rhonda Hart*


APFFEL LEGAL, PLLC
Darrell A. Apffel
State Bar No. 01276600
D. Blake Apffel
State Bar No. 24081911
104 Moody Ave. (21st)
Galveston, Texas 77550
P.O. Box 1078

MARTINEZ & MCGUIRE PLLC

*Clint McGuire*

Clint E. McGuire
State Bar No. 24013139
17227 Mercury Drive, Suite B
Houston, Texas 77546
Phone: 281-286-9100
Fax: 281-286-9105
Clint@mmtriallawyers.com

*Attorney for Plaintiffs Rosie Yanas and*
*Christopher Stone and Plaintiff-Intervenors*
*Mark Mcleod, Gail McCleod, Pamela*
*Stanich, Shannan Claussen, Clayton Horn,*
*Abdul Aziz, Farah Naz and Flo Rice*

EVERYTOWN LAW
Alla Lefkowitz*
Molly Thomas-Jensen*
Krystan Hitchcock*
450 Lexington Ave, P.O. Box #4184
New York, NY 10017

7

Galveston, TX 77553
Phone: 409-744-3597
Fax: 281-612 9992
Darrell@apffellegal.com
Blake@apffellegal.com

*Attorneys for Plaintiffs*
*William Beazley and Shirly Beazley*

THE CHANDLER LAW FIRM LLP
Sherry Chandler
Lewis Chandler
4141 Southwest Freeway, Suite 300
Houston, Texas 77027
Phone: 713-228-8508
Fax: 713-228-8507
sherry@chandlerlawllp.com
lewis@chandlerlawllp.com

SOUTHERLAND LAW FIRM
J. Alfred Southerland
4141 Southwest Freeway, Suite 300
Houston, Texas 77027
Phone: 281-298-4932
Fax: 713-228-8507
alf@southerlandlawfirm.com

Phone: 646-324-8226
Fax: 917-410-6932
Alefkowitz@everytown.org
Mthomasjensen@everytown.org
Khitchcock@everytown.org

*Attorneys for Plaintiffs-Intervenors*
*Abdul-Aziz and Farah Naz*

*\*Admitted Pro Hac Vice*

TYLKA LAW CENTER, P.C.
Lawrence M. Tylka
Texas Bar No. 20359800
Tyler J. Tylka
Texas Bar No. 24093287
1104 East Main
League City, Texas, 77573
Phone: 281-557-1500
Fax: 281-557-1510
legal@tylkalawcenter.com

*Attorneys for Plaintiffs*
*Autumn Tisdale and William Tisdale, Jr.*

## CERTIFICATE OF SERVICE

I certify that, on April 1, 2022, a true and correct copy of the Plaintiffs' Amended Application for Attorneys' Fees and Costs was served on all counsel of record via the Court's electronic-notification system.

Clint E. McGuire
MARTINEZ & MCGUIRE PLLC

*Counsel for Plaintiffs Rosie Yanas and Christopher Stone, and Plaintiffs-Intervenors Mark Mcleod, Gail Mcleod, Pamela Stanich, Shannan Claussen, Clayton Horn, Abdul Aziz, Farah Naz and Flo Rice.*

9

CAUSE NO. CV-0081158

ROSIE YANAS and CHRISTOPHER
STONE, individually and as next friends
of CHRISTOPHER JAKE STONE

     Plaintiffs,

VS.

ANTONIOS PAGOURTZIS and ROSE
MARIE KOSMETATOS

     Defendants.

COUNTY COURT AT LAW
GALVESTON COUNTY, TEXAS

COURT NO. 3

**AFFIDAVIT OF ALLA LEFKOWITZ IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS**

BEFORE ME, the undersigned authority, personally appeared Alla Lefkowitz, who being duly

sworn, stated as follows:

  1.  My name is Alla Lefkowitz. I am an attorney of record for Abdul Aziz and Farah

Naz, individually and as next friends of Sabika Aziz Sheikh, in the above-captioned case. I am

over the age of eighteen, of sound mind, and have never been convicted of a felony. The statements

in this affidavit are true and correct and are based on my personal knowledge.

  2.  I am an attorney licensed in the State of New York since 2011 and in Washington

D.C. since 2017. My license has never been suspended or revoked.

  3.  I was admitted *pro hac vice* by this Court to practice in the above-captioned case. I

was also admitted *pro hac vice* by the Fourteenth District Court of Appeals to represent my clients

in the mandamus proceeding captioned as *In re: LuckyGunner, LLC, Red Stag Fulfillment, LLC,*

*Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Court of Appeals Number 14-21-

00194-CV) on May 12, 2021. I was admitted *pro hac vice* by the Supreme Court of Texas to

represent my clients in the mandamus proceeding captioned as *In re: LuckyGunner, LLC, Red Stag*

*Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Supreme Court Case Number 21-0463) on June 15, 2021.

4.      I graduated from Duke Law School in 2010. From 2011-2013, I worked as an associate at the law firm of Skadden, Arps, Slate, Meagher & Flom LLP in New York, primarily in the Litigation group.  From 2014-2017, I worked at the Brady Center to Prevent Gun Violence as a Staff Attorney and then Senior Staff Attorney. Since 2017, I have worked at Everytown Law, first as a Deputy Director, then as a Director of Affirmative Litigation, and currently as the Senior Director of Affirmative Litigation. I am one of the founding attorneys at Everytown Law. In my current position, I regularly brief and argue motions, take and oversee depositions, oversee case strategy and development, and review and edit the work of attorneys on the Affirmative Litigation team.

5.      First at Brady, and now at Everytown, I regularly represent victims of gun violence as plaintiffs in wrongful death and personal injury litigation. My cases have resulted in ground-breaking settlements and judicial precedent throughout the country. This is a highly specialized area of law due to the existence of the Protection of Lawful Commerce in Arms Act ("PLCAA"), a federal law on which defendants in the gun industry regularly rely. Through my work, I have become one of the foremost experts in the country on PLCAA. In addition to having litigated over a dozen cases involving PLCAA, I write on the subject and am regularly asked to speak on panels about PLCAA and firearms litigation.

6.      As the Senior Director of Affirmative Litigation, I am responsible for, among other things, assigning attorneys to cases and overseeing their work. Given the importance of this case, the multiple complex issues it entails, and the tight turnaround time on multiple appellate briefs, four Everytown Law attorneys were assigned to this case (including myself). Because a central

argument in the Tennessee Defendants' 91a motion and mandamus petitions was the applicability of PLCAA, the Everytown Law attorneys took the lead role in responding to the motion and mandamus proceedings. This entailed (i) reviewing a total of 11 briefs filed by the Tennessee Defendants; (ii) reviewing one amicus brief filed in support of the Tennessee Defendants by the National Shooting Sports Foundation; (iii) researching and drafting five responsive briefs; and (iv) preparing for and arguing the motion in this Court. The combined effort required a substantial allocation of time and resources, which is detailed below and in the affidavits of Molly Thomas-Jensen, Krystan Hitchcock, and Andrew Nellis. As detailed below, each of the Everytown Law attorneys took on different aspects of the above work, to avoid any duplication.

7.      In order to respond to the 91a motion at the trial court level, I undertook the following necessary work: (i) corresponded with local counsel about case research, the Texas Rules of Civil Procedure, local rules, and reviewing various versions of the opposition brief; (ii) drafted the portions of Plaintiffs' opposition brief pertaining to PLCAA; (ii) reviewed and edited the remaining portions of the brief which were drafted by my colleague Krystan Hitchcock; (iii) met with my colleague Krystan Hitchcock on numerous occasions to supervise her research and drafting; (iv) conducted legal research; (v) met with co-counsel to discuss strategy for opposing the Rule 91a motion; (vi) participated in two moot courts in advance of the Rule 91a motion hearing; and (vii) argued the Rule 91a motion on behalf of all the plaintiffs in the consolidated cases. As indicated in the affidavit of Molly Thomas-Jensen, her role with respect to the trial court 91a proceedings was to review and provide edits to the opposition brief, as well as to help prepare me for the 91a hearing.

8.      At the Court of Appeals, I (i) drafted and edited correspondence to the court in response to the Tennessee Defendants' correspondence; (ii) reviewed the Tennessee Defendants'

Emergency Motion to Stay; and (iii) reviewed and edited the Plaintiffs' 21-page opposition to the Emergency Motion to Stay. None of my other colleagues are seeking reimbursement for any work at this stage.

9.      After the Tennessee Defendants filed their petition for mandamus and motion to stay at the Texas Supreme Court, I undertook the following work: (i) reviewing and editing the opposition to the mandamus petition; (ii) conducting research for, and drafting portions of, the merits opposition brief; (iii) reviewing and editing the merits opposition brief; and (iv) meeting with our Texas appellate counsel, Martin Siegel, to discuss appellate strategy. At the Texas Supreme Court stage, it was necessary for us to respond to three separate briefs filed by the Tennessee Defendants: (i) an emergency motion to stay; (ii) a 70-page petition for writ of mandamus, which raised a number of complex issues pertaining to PLCAA, the appropriate standard for reviewing 91a motions, the required state of mind for the defendants to be held liable, the applicability of Texas common law, and the standards for mandamus review; and (iii) a 68-page brief on the merits, which addressed numerous topics including PLCAA, the appropriate standard for reviewing 91a motions, the sufficiency of the Plaintiffs' complaints, the required state of mind for the defendants to be held liable, Texas common law, and whether the Tennessee Defendants were irreparably harmed. The Plaintiffs' necessary responsive briefing (as requested by the Supreme Court) included: (i) a 21-page opposition to the motion to stay, explaining why a stay was not appropriate at the current stage; (ii) a 20-page response to the petition for writ of mandamus, which addressed the appropriate pleading standards, the applicability of PLCAA, and the fact that Plaintiffs' claims are supported by Texas common law; and (iii) a 61-page merits opposition brief, which addressed in greater detail, the appropriate pleading standards, the relevant statutory background, the applicability of PLCAA, and the role of Texas common law. As

reflected in his affidavit, Andrew Nellis was the primary drafter of the opposition to the emergency motion to stay, and also drafted portions of the oppositions to the mandamus petition and merits brief. Krystan Hitchcock drafted additional portions of the oppositions to the mandamus petition and merits brief. Molly Thomas-Jensen provided editing assistance on the oppositions to the motion to stay and petition for mandamus, and also drafted the portion of the opposition merits brief pertaining to the appropriate standard of review. Finally, my role at the Supreme Court stage was primarily to provide edits to the mandamus opposition brief and merits opposition brief, as well as to draft portions of the merits opposition brief pertaining to PLCAA and Texas tort law.

10.    I kept contemporaneous records of my time working on responding to the Rule 91a motion and the corresponding mandamus petitions. The entries for which we are seeking a court award are set forth below. These time records are maintained in chronological order, showing the date, timekeeper, task performed, and time expended for all work for each entry. My time spent performing the above legal work was 142.34 hours.

| Effective Date | Hours | Description |
|---|---|---|
| 01/21/2021 | .5 | Research for 91a brief (.5hrs) |
| 01/25/2021 | 4.00 | Research for 91a opposition brief; drafting brief |
| 01/27/2021 | 3.5 | Drafting portion of 91a opposition brief. |
| 02/01/2021 | 4.25 | Drafting 91a opposition brief; reviewing section drafted by K. Hitchcock |
| 02/04/2021 | 1.50 | Drafting 91a opposition brief |
| 02/06/2021 | 4.25 | Drafting 91a opposition brief |
| 02/07/2021 | 12.00 | Drafting 91a opposition brief |
| 02/08/2021 | 2.00 | Drafting 91a opposition brief |
| 02/09/2021 | 5.50 | Editing 91a opposition brief; additional research for opposition brief |
| 02/10/2021 | 4.50 | Finalizing 91a opposition brief |

| | | |
|---|---|---|
| 02/12/2021 | 0.50 | Meeting w/M. Thomas-Jensen, K. Hitchcock, Clint McGuire, S. Chandler, A. Southerland, D. Apffel and L. Chandler to discuss strategy for upcoming 91a motion hearing. |
| 03/08/2021 | 1.00 | Moot court for 91a hearing w/M. Thomas-Jensen and K. Hitchcock |
| 03/08/2021 | 5.33 | Prepare for 91a hearing; review defendants' reply briefs. |
| 03/09/2021 | 9.50 | Prepare for 91a hearing; review defendants' reply briefs |
| 03/09/2021 | 1.00 | Moot court for 91a hearing w/M. Thomas-Jensen; K. Hitchcock; and E. Tirschwell |
| 03/10/2021 | 2.75 | Prepare for 91a hearing |
| 03/10/2021 | 0.50 | Meeting w/C. McGuire, A. Todd, D. Appfell, M. Thomas-Jensen, and K. Hitchcock in advance of 91a hearing |
| 03/10/2021 | 1.33 | 91a hearing |
| 04/14/2021 | 0.75 | Draft letter in response to defendants' letter to Court of Appeals (.5 hr); review M. Thomas-Jensen's edits to letter (15 min) |
| 04/20/2021 | 2.33 | Review first draft of opposition to emergency stay brief and provide edits. |
| 04/21/2021 | 5.17 | Review and edit second turn of opposition brief to emergency stay motion. |
| 04/22/2021 | 2.42 | Final review and edits of opposition to emergency stay brief (1 hr 45 min); put together shell of supplemental mandamus record (40 min). |
| 06/01/2021 | 1.00 | Phone call with M. Siegel, M. Thomas-Jensen, A. Nellis, and K. Hitchcock to discuss response to motion for stay and mandamus petition in the Texas Supreme Court |
| 07/15/2021 | 1.17 | Reviewing and commenting on draft opposition to mandamus petition. |
| 07/26/2021 | 3.25 | Reviewing and editing draft opposition to mandamus petition. |
| 07/29/2021 | 0.50 | Meeting with M. Siegel, M. Thomas-Jensen, A. Nellis and K. Hitchcock to discuss revisions to mandamus opposition brief |
| 07/30/2021 | 0.75 | Further edits to Statement of Jurisdiction in mandamus opposition brief |
| 08/02/2021 | 3.42 | Edits to mandamus opposition brief |
| 08/05/2021 | 2.33 | Continue editing mandamus opposition brief |
| 08/06/2021 | 1.00 | Edit preliminary and jurisdiction section of mandamus opposition brief. |
| 08/07/2021 | 3.42 | Continue editing mandamus opposition brief; input co-counsel edits |

| 08/08/2021 | 4.58 | Continue editing mandamus opposition brief; input co-counsel edits. |
| 08/09/2021 | 2.67 | Finalizing mandamus opposition brief - final edits, proofread, communicate with co-counsel. |
| 12/06/2021 | 2.50 | Draft, and conduct research for, knowing violation section of Santa Fe merits brief. |
| 12/08/2021 | 3.50 | Draft, and conduct research for, knowing violation section of Santa Fe merits opposition brief. |
| 12/11/2021 | 3.50 | Continue drafting, and conducting research for, Santa Fe merits opposition brief (focus on PLCAA section). |
| 12/12/2021 | 4.50 | Continue drafting Santa Fe merits opposition brief (PLCAA section); input sections from other team members. |
| 12/13/2021 | 5.17 | Continue drafting Santa Fe Merits opposition brief |
| 12/14/2021 | 4.42 | Continue drafting portion of Santa Merits opposition brief |
| 12/15/2021 | 4.25 | Continuing to edit, and conduct research for, Santa Fe merits opposition brief. |
| 12/16/2021 | 3.75 | Continue revising, and conducting further research for, Santa Fe merits opposition brief |
| | | |
| 12/18/2021 | 1.75 | Conduct outstanding case research for Santa Fe merits brief |
| 12/19/2021 | 4.50 | Continue editing Santa Fe Merits opposition brief; conduct outstanding case research for brief. |
| 12/20/2021 | 3.50 | Continue to edit Santa Fe merits brief |
| 12/21/2021 | 2.33 | Finalize and proofread Santa Fe Merits brief |
| **Total** | 142.34 | |

11.     None of the Everytown Law attorneys, including myself, have included any time spent compiling their affidavits for this application, time for any of their cite-checking work, or time for any internal meetings. We have also not included the time of any Everytown Law paralegal and administrative staff, or any consultation that we engaged in with attorneys who are not attorneys of record in this case. I have also not included the time I spent drafting and reviewing email correspondence with my co-counsel in Texas, and the time I spent reviewing the Tennessee Defendants' briefs.

12.     As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge our clients attorneys' fees. However, our clients in this case have authorized Everytown Law to seek

and retain an award of attorneys' fees and costs from the Court, to the extent such an award is authorized by law. The reasonable hourly rate for my time in this case is $450/hour. This rate is based on a number of factors, including my experience and expertise, the novelty and complexity of the issues involved (particularly with respect to PLCAA), and the market rate for attorneys in the Houston-area with similar skills, experience and expertise. In compiling this affidavit, I reviewed application for attorneys' fees submitted by attorneys litigating in Texas with similar levels of experience from specialized public-interest organizations. My hourly rate is in-line or lower than the rates that I reviewed in the aforementioned applications.

13.     Thus, to date, and excluding certain work that I have referred to in paragraph 11 above, I have performed work valued at $64,053 in attorney's fees. I have arrived at this amount by multiplying the time worked by my hourly rate. In my opinion, this expense is a reasonable and necessary amount of attorney's fees in order to defend against the Tennessee Defendants' Rule 91a motion in this case given the legal complexity of the issues involved and time spent. Although I do not believe that any of the hours worked on the 91a motion and its corresponding mandamus petitions were excessive, redundant or otherwise unnecessary, to err on the conservative side and account for my supervisory role, I am reducing this amount of my fees for which we are seeking reimbursement by 15%, down to $54,445.05.

14.     In addition to my hourly fees, I paid $255.88 on April 28, 2021 for *pro hac vice* admission to the Fourteenth of Appeals, and I paid $255.88 on June 11, 2021 for *pro hac vice* admission to the Supreme Court of Texas – both fees that I (and my colleagues) would not have incurred but for Tennessee Defendants' unsuccessful appeals.

15.     I thus seek reimbursement for $54,956.81 (attorney's fees and *pro hac vice* admission costs).

16.     Further affiant sayeth not.


Signed this ⌐1ˢᵗ date of April 2022.

_____
Alla Lefkowitz
Admitted *Pro Hac Vice*


SUBSCRIBED AND SWORN TO BEFORE ME on the ⌐1 date of April 2021, to certify which witness my hand and official seal.

_____
Notary Public for the ~~State of New York~~

District of Columbia
Signed and sworn to before me on
1 April , 2022
by Alla Lefkowitz
Ed Wiley Shelton
Notary Public
My commission expires 05/14/2024

CAUSE NO. CV-0081158

| | |
|---|---|
| ROSIE YANAS and CHRISTOPHER STONE, individually and as next friends of CHRISTOPHER JAKE STONE | |
| Plaintiffs, | COUNTY COURT AT LAW GALVESTON COUNTY, TEXAS |
| VS. | COURT NO. 3 |
| ANTONIOS PAGOURTZIS and ROSE MARIE KOSMETATOS | |
| Defendants. | |

## AFFIDAVIT OF MOLLY THOMAS-JENSEN IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

BEFORE ME, the undersigned authority, personally appeared Molly Thomas-Jensen, who being duly sworn, stated as follows:

1.      My name is Molly Thomas-Jensen. I am an attorney of record for Abdul Aziz and Farah Naz in the above-captioned case. I am over the age of eighteen, of sound mind, and have never been convicted of a felony. The statements in this affidavit are true and correct and are based on my personal knowledge.

2.      I am an attorney licensed in the State of New York since 2009. My license has never been suspended or revoked. I was admitted *pro hac vice* by this Court to represent my clients in the above-captioned case on January 2, 2019. I was admitted *pro hac vice* by the Fourteenth Court of Appeals to represent my clients in the mandamus petition captioned as *In re: LuckyGunner, LLC, Red Stag Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Court of Appeals Number 14-21-00194-CV) on May 12, 2021. I was admitted *pro hac vice* by the Supreme Court of Texas to represent my clients in the mandamus petition captioned as *In re:*

1

*LuckyGunner, LLC, Red Stag Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Supreme Court Case Number 21-0463) on June 15, 2021.

3.     I graduated from Harvard Law School, *magna cum laude*, in 2008. Following law school, I served as a law clerk to the Honorable Daniel E. Winfree, Justice on the Alaska Supreme Court from 2008-2009. From 2009-2010, I clerked for the Honorable Robert P. Patterson, Jr., U.S. District Judge on the U.S. District Court for the Southern District of New York.

4.     From 2010-2012, I practiced law at South Brooklyn Legal Services, where I provided direct representation to New Yorkers living in poverty. I appeared regularly in court (federal and state) and also represented clients in administrative proceedings. From 2012-2015, I worked in house at a federation of labor unions. From 2016-2018, I served as deputy counsel and, after a promotion, counsel to Letitia James, who was then Public Advocate for the City of New York. I advised Public Advocate James on numerous matters and represented the Public Advocate in litigation in numerous courts around the country. In that capacity, I led litigation against agencies of the City of New York to vindicate the civil rights of New Yorkers and increase transparency and oversight of city agencies. I briefed and argued oppositions to motions to dismiss and appeals and supervised a large amicus brief practice, including amicus briefs concerning the applicability of the Protection of Lawful Commerce in Arms Act.

5.     I have worked at Everytown Law, the litigation arm of Everytown for Gun Safety Support Fund, since 2018, where I am now Deputy Director, Affirmative Litigation. My practice at Everytown Law focuses on representing victims and survivors of gun violence. At Everytown Law, I regularly brief and argue dispositive motions, take depositions, brief and argue appeals, and conduct evidentiary hearings in state and federal courts across the country. As an expert on

litigation in the aftermath of shooting incidents, I regularly speak at law schools about our work and advocating on behalf of victims and survivors of gun violence.

6.     Given my work at the Public Advocate's Office and at Everytown Law, I have developed an expertise in briefing and arguing motions concerning the applicability of the Protection of Lawful Commerce in Arms Act. This is a specialized area of law that requires knowledge of the statute's history, text, and applicable caselaw. I am one of few attorneys in the country with experience in litigating the Protection of Lawful Commerce in Arms Act.

7.     During proceedings before this Court, I revised and edited the Plaintiffs' opposition to Defendants' Rule 91a motion to dismiss, which was argued before this Court on March 10, 2021. To do this, I reviewed the Tennessee Defendants' Rule 91a motion to dismiss and the pleadings in this case, performed legal research, closely read and revised the draft opposition brief prepared by my colleagues, Alla Lefkowitz and Krystan Hitchcock. Additionally, I participated in two moot courts in anticipation of the hearing and met with co-counsel to discuss our joint strategy concerning this brief.

8.     I am not requesting fees for any work performed during proceedings before the Fourteenth Court of Appeals, which was minimal. During proceedings before the Texas Supreme Court, I reviewed briefs filed by the Tennessee Defendants, met with co-counsel to discuss appellate strategy, edited briefs, and drafted portions of briefs.

9.     My time spent in performing the above legal work was 22.96 hours. I kept contemporaneous records of my time working on responding to the Rule 91a motion and subsequent mandamus petitions. The entries for which we are seeking a court award are set forth below. These time records are maintained in chronological order, showing the date, timekeeper, task performed, and time expended for all work for each entry. I have not included the time I spent

cite-checking briefs, reading the defendants' briefs, attending the 91a motion hearing, attending internal meetings about this matter, or compiling this affidavit.

| **Effective Date** | **Hours** | **Description** |
|---|---|---|
| 02/07/2021 | 3.30 | Editing PLCAA section of opposition to Rule 91A motion to dismiss in Yanas et al. v. Pagourtzis et al. |
| 02/10/2021 | 2.00 | Proofreading final opposition brief to Tennessee Defendants' Rule 91a motion |
| 02/12/2021 | 0.50 | Meeting to discuss strategy and arguments for 91a motion hearing. Present: A. Lefkowitz, K. Hitchcock, C. McGuire, D. Appfel, L. Tylka, S. Chandler, A. Southerland, L. Chandler. |
| 03/08/2021 | 1.00 | Moot court for 91a hearing with A. Lefkowitz and K. Hitchcock |
| 03/09/2021 | 1.00 | Moot court for 91a hearing with A. Lefkowitz; K. Hitchcock; and E. Tirschwell |
| 03/10/2021 | 0.50 | Meeting with C. McGuire, A. Todd, D. Appfel, A. Lefkowitz, and K. Hitchcock in advance of 91a hearing |
| 06/01/2021 | 1.00 | Phone call with M. Siegel, A. Lefkowitz, A. Nellis, and K. Hitchcock to discuss response to motion for stay and mandamus petition |
| 06/11/2021 | 1.83 | Editing opposition to motion for stay |
| 07/24/2021 | 5.58 | Editing response to petition for mandamus |
| 07/25/2021 | 0.75 | Editing response to petition for mandamus |
| 07/29/2021 | 0.50 | Meeting with A. Lefkowitz, A. Nellis, K. Hitchcock, and M. Siegel to discuss revisions to response to mandamus petition |
| 12/04/2021 | 5.00 | Drafting portion of merits opposition brief in mandamus petition |
| **Total:** | **22.96** | |

10. As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge our clients attorneys' fees. However, our clients in this case have authorized Everytown Law to seek and retain an award of attorneys' fees and costs from the Court, to the extent such an award is

authorized by law. The reasonable hourly rate for my time in this case is $400/hour. This rate is based on a number of factors, including my experience and expertise, the novelty and complexity of the issues involved (particularly with respect to the Protection of Lawful Commerce in Arms Act), and the market rate for attorneys in the Houston-area with similar skills, experience and expertise. In compiling this affidavit, I reviewed application for attorneys' fees submitted by attorneys litigating in Texas with similar levels of experience from specialized public-interest organizations. My hourly rate is in-line or lower than the rates that I reviewed in the aforementioned applications.

11. Thus, to date and excluding the time attending the motion hearing, I have performed work valued at $9,184 in attorney's fees. I have arrived at this amount by multiplying the time worked by my hourly rate. In my opinion, this expense is a reasonable and necessary amount of attorney's fees in order to defend against the Tennessee Defendants' 91a motion and mandamus petitions stemming therefrom in this case given the legal complexity of the issues involved and time spent.

12. In addition to my hourly fees, I paid $255.88 on April 28, 2021 for *pro hac vice* admission to the Fourteenth of Appeals, and I paid $255.88 on June 11, 2021 for *pro hac vice* admission to the Supreme Court of Texas.

13. I thus seek reimbursement for $9,695.76 (attorney's fees and *pro hac vice* admission costs).

14. Further affiant sayeth not.

Signed this 1st date of April 2022.

Molly Thomas-Jensen
Admitted *Pro Hac Vice*

SUBSCRIBED AND SWORN TO BEFORE ME on the 1st date of April 2022, to certify which witness my hand and official seal.

Notary Public for the State of New York

CHLOE HOLZMAN
Notary Public, State of New York
No. 02HO6333731
Qualified in KINGS COUNTY
Commission Expires NOV. 30, 20 23

6

CAUSE NO. CV-0081158

| | |
|---|---|
| ROSIE YANAS and CHRISTOPHER STONE, individually and as next friends of CHRISTOPHER JAKE STONE | |
| Plaintiffs, | COUNTY COURT AT LAW GALVESTON COUNTY, TEXAS |
| VS. | COURT NO. 3 |
| ANTONIOS PAGOURTZIS and ROSE MARIE KOSMETATOS | |
| Defendants. | |

### AFFIDAVIT OF KRYSTAN HITCHCOCK IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

BEFORE ME, the undersigned authority, personally appeared Krystan Hitchcock, who being duly sworn, stated as follows:

1.      My name is Krystan Hitchcock. I am an attorney of record for Abdul Aziz and Farah Naz in the above-captioned case. I am over the age of eighteen, of sound mind, and have never been convicted of a felony. The statements in this affidavit are true and correct and are based on my personal knowledge.

2.      I am an attorney licensed in the State of New York since 2014. My license has never been suspended or revoked. I was admitted *pro hac vice* by this Court to represent my clients in the above-captioned case on July 15, 2019. I was admitted *pro hac vice* by the Fourteenth Court of Appeals to represent my clients in the mandamus petition captioned as *In re: LuckyGunner, LLC, Red Stag Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Court of Appeals Number 14-21-00194-CV) on May 12, 2021. I was admitted *pro hac vice* by the Supreme Court of Texas to represent my clients in the mandamus petition captioned as *In re:*

*LuckyGunner, LLC, Red Stag Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (Supreme Court Case Number 21-0463) on June 15, 2021.

3.      I graduated from New York University School of Law in 2013. Following law school, I served as an Excelsior Fellow Attorney for the New York State Office of Children & Family Services from 2013-2015. From 2015-2017, I served as a Family Court Legal Services Attorney for the New York City Administration for Children Services (ACS). I appeared regularly in New York Family Court, representing ACS in child neglect and abuse proceedings. From 2017-2018, I served ACS as an Attorney Team Leader, continuing to maintain my active caseload of neglect, abuse, and severe abuse cases in Bronx Family Court while also supervising junior attorneys and approving settlements.

4.      I have worked at Everytown Law, the litigation arm of Everytown for Gun Safety Support Fund, since 2018, where I am now Counsel. My practice at Everytown Law focuses on representing victims and survivors of gun violence. At Everytown Law, I regularly draft complaints, motions, amicus briefs and public record requests; brief dispositive motions, participate in depositions, and appear in state and federal courts across the country. As an expert on litigation in the aftermath of shooting incidents, I regularly speak at law schools about our work and advocating on behalf of victims and survivors of gun violence.

5.      Given my work at Everytown Law, I have developed an expertise in briefing and arguing motions concerning the applicability of the Protection of Lawful Commerce in Arms Act. This is a specialized area of law that requires knowledge of the statute's history, text, and applicable caselaw. I am one of few attorneys in the country with experience in litigating the Protection of Lawful Commerce in Arms Act.

6.     In this case, I researched, drafted and edited the Plaintiffs' opposition to Defendants' Rule 91a motion to dismiss, which was argued before this Court on March 10, 2021. To do this, I reviewed the Defendants' Rule 91a motion to dismiss and the pleadings in this case, performed legal research, drafted the draft opposition with my colleague Alla Lefkowitz, and completed revisions put forth by my colleague Molly Thomas-Jensen. Additionally, I participated in two moot courts in anticipation of the hearing and met with co-counsel to discuss our joint strategy concerning this brief. Although I believe that the time spent on this work was reasonable and necessary, in an effort to keep expenses down, we are not seeking reimbursement for any of my work at the trial court level and those time entries are not reflected below.

7.     I did not perform any work with respect to the 91(a) motion before the Fourteenth Court of Appeals.

8.     During proceedings before the Texas Supreme Court, I reviewed briefs filed by the Tennessee Defendants, met with co-counsel to discuss appellate strategy, edited briefs, and drafted portions of briefs.

9.     My time spent in performing the above legal work was 23.5 hours. I kept contemporaneous records of my time working on responding to the Rule 91a motion. The entries for which we are seeking a court award are set forth below. These time records are maintained in chronological order, showing the date, timekeeper, task performed, and time expended for all work for each entry. I have not included the time I spent on any internal meetings or compiling this affidavit.

| Effective Date | Hours | Description |
|---|---|---|
| 05/27/2021 | 3.00 | Outlining response to forthcoming mandamus petition |
| 06/01/2021 | 1.00 | Phone call with M. Siegel, A. Lefkowitz, A. Nellis, and M. Thomas-Jensen, to discuss response for mandamus petition |

| Effective Date | Hours | Description |
|---|---|---|
| 06/02/2021 | 2.50 | Researching for mandamus opposition |
| 06/08/2021 | 2.50 | Editing outline for response to petition for mandamus |
| 06/21/2021 | 2.00 | Drafting response to petition for mandamus |
| 06/23/2021 | 2.50 | Drafting response to petition for mandamus |
| 07/19/2021 | 2.00 | Drafting portions of merits opposition brief |
| 07/20/2021 | 1.00 | Drafting portions of merits opposition brief |
| 07/21/2021 | 1.50 | Drafting portions of merits opposition brief |
| 07/22/2021 | 2.00 | Drafting portions of merits opposition brief |
| 07/23/2021 | 2.50 | Drafting portions of merits opposition brief |
| 07/29/2021 | 0.50 | Meeting with A. Lefkowitz, A. Nellis, M. Thomas-Jensen, and M. Siegel to discuss revisions to response to mandamus petition |
| 07/30/2021 | 0.50 | Drafting portions of merits opposition brief |
| **Total:** | **23.5** | |

10.     As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge our clients attorneys' fees. However, our clients in this case have authorized Everytown Law to seek and retain an award of attorneys' fees and costs from the Court, to the extent such an award is authorized by law. The reasonable hourly rate for my time in this case is $350/hour. This rate is based on a number of factors, including my experience and expertise, the novelty and complexity of the issues involved (particularly with respect to PLCAA), and the market rate for attorneys in the Houston-area with similar skills, experience and expertise. In compiling this affidavit, I

reviewed application for attorneys' fees submitted by attorneys litigating in Texas with similar levels of experience from specialized public-interest organizations. My hourly rate is in-line or lower than the rates that I reviewed in the aforementioned applications.

11.     Thus, to date and excluding the time attending the motion hearing, and excluding the time referenced in paragraphs 6 and 7, I have performed work valued at $8,225 in attorney's fees. I have arrived at this amount by multiplying the time worked by my hourly rate. In my opinion, this expense is a reasonable and necessary amount of attorney's fees in order to defend against the Tennessee Defendants' 91a motion in this case given the legal complexity of the issues involved and time spent.

12.     In addition to my hourly fees, I paid $255.88 on April 28, 2021 for *pro hac vice* admission to the Fourteenth of Appeals, and I paid $255.88 on June 11, 2021 for *pro hac vice* admission to the Supreme Court of Texas.

13.     I thus seek reimbursement for $8736.76 (attorney's fees and *pro hac vice* admission costs).

14.     Further affiant sayeth not.

Signed this 31 date of March 2022.

_____

Krystan Hitchcock
Admitted *Pro Hac Vice*


SUBSCRIBED AND SWORN TO BEFORE ME on the 31 date of March 2022, to certify which witness my hand and official seal.

TERIL M HOLSTON
Notary Public, State of New York
Reg. No. 02HO6386508
Qualified in Bronx County
Commission Expires January 28, 2023

_____

Notary Public for the State of New York

CAUSE NO. CV-0081158

| | |
|---|---|
| ROSIE YANAS and CHRISTOPHER STONE, individually and as next friends of CHRISTOPHER JAKE STONE | |
| Plaintiffs, | COUNTY COURT AT LAW GALVESTON COUNTY, TEXAS |
| VS. | COURT NO. 3 |
| ANTONIOS PAGOURTZIS and ROSE MARIE KOSMETATOS | |
| Defendants. | |

**AFFIDAVIT OF ANDREW NELLIS IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND COSTS**

BEFORE ME, the undersigned authority, personally appeared Andrew Nellis, who being duly sworn, stated as follows:

1.     My name is Andrew Nellis. I am the attorney of record for Abdul Aziz and Farah Naz in the above-captioned case. I am over the age of eighteen, of sound mind, and have never been convicted of a felony. The statements in this affidavit are true and correct and are based on my personal knowledge.

2.     I am an attorney licensed in the State of New York since 2017 and in the District of Columbia since 2018. My license has never been suspended or revoked. I was admitted *pro hac vice* to represent my clients before the Texas Supreme Court in the related mandamus proceeding captioned *In re LuckyGunner, LLC, Red Stag Fulfillment, LLC, Mollenhour Gross, LLC, Jordan Mollenhour, and Dustin Gross* (No. 21-0463), and I have applied for admission *pro hac vice* to represent them before this Court in the instant case.

3.     I graduated from New York University School of Law, *magna cum laude*, in 2016. From 2016 to 2018, I was a litigation fellow at Americans United for Separation of Church and

State, during which time I represented parties in courts across the country. From 2018 to 2019, I served as a law clerk to the Honorable Allyne R. Ross, U.S. District Judge on the U.S. District Court for the Eastern District of New York. From 2019 to 2020, I served as a law clerk to the Honorable Carolyn Dineen King, U.S. Circuit Judge on the U.S. Court of Appeals for the Fifth Circuit.

4.     I have worked at Everytown Law, the litigation arm of Everytown for Gun Safety Support Fund, as an associate counsel, since 2021. My practice at Everytown Law focuses on representing victims and survivors of gun violence. At Everytown Law, I have briefed a variety of dispositive motions and appeals, including several related to the Protection of Lawful Commerce in Arms Act (PLCAA), in courts across the country.

5.     In this case, I drafted substantial portions of: the Plaintiffs' opposition to the Tennessee Defendants' motion for a stay of proceedings in the Texas Supreme Court, the Plaintiffs' response to the Tennessee Defendants' mandamus petition in the Supreme Court, and the Plaintiffs' merits brief in opposition in the Supreme Court. I also performed legal research, read and revised portions of these briefs prepared by my colleagues Alla Lefkowitz, Molly Thomas-Jensen, and Krystan Hitchcock, and met with cocounsel to discuss appellate strategy.

6.     My time spent in performing the above legal work was 79.47 hours. I kept contemporaneous records of my time working on opposing the mandamus petition. The entries for which we are seeking a court award are set forth below. These time records are maintained in chronological order, showing the date, task performed, and time expended for all work for each entry. I have not included the time I spent cite-checking briefs, attending internal meetings, or compiling this affidavit.

| Effective Date | Hours | Description |
|---|---|---|
| 6/01/2021 | 1.00 | Meeting with M. Siegel, A. Lefkowitz, M. Thomas-Jensen, & K. Hitchcock re responding to anticipated mandamus petition |
| 6/02/2021 | 2.60 | Research deliberate ignorance law |
| 6/03/2021 | 0.85 | Read and analyze Tennessee Defendants' mandamus filing |
| 6/04/2021 | 1.28 | Research Texas Supreme Court mandamus procedure |
| 6/07/2021 | 5.18 | Outline opposition to stay motion |
| 6/08/2021 | 6.88 | Draft opposition to stay motion |
| 6/09/2021 | 3.18 | Draft opposition to stay motion |
| 6/10/2021 | 4.02 | Edit opposition to stay motion |
| 6/11/2021 | 2.67 | Edit opposition to stay motion |
| 6/25/2021 | 0.90 | Read and analyze *In re Academy Sports* decision |
| 6/30/2021 | 1.42 | Research Texas mandamus law |
| 7/15/2021 | 0.60 | Begin portions of response to mandamus petition |
| 7/19/2021 | 3.35 | Conduct research for and draft response to mandamus petition |
| 7/20/2021 | 4.38 | Conduct research for and draft response to mandamus petition |
| 7/21/2021 | 1.32 | Draft response to mandamus petition |
| 7/22/2021 | 0.78 | Draft response to mandamus petition |
| 7/23/2021 | 0.50 | Draft response to mandamus petition |
| 7/28/2021 | 0.35 | Research applicable legal standard |

| Effective Date | Hours | Description |
|---:|---:|---|
| 7/29/2021 | 3.78 | Conduct research for response to mandamus petition |
| 7/29/2021 | 0.50 | Meeting with M. Siegel, A. Lefkowitz, M. Thomas-Jensen, & K. Hitchcock re revisions to response to mandamus petition |
| 7/30/2021 | 2.02 | Conduct research for response to mandamus petition |
| 8/2/2021 | 0.64 | Conduct research for and edit response to mandamus petition |
| 8/5/2021 | 0.45 | Review edits to response to mandamus petition |
| 8/6/2021 | 0.28 | Review edits to response to mandamus petition |
| 8/9/2021 | 2.73 | Conduct research for and review edits to response to mandamus petition |
| 9/28/2021 | 0.32 | Research legal theories for mandamus merits briefing |
| 11/15/2021 | 1.35 | Conduct research for and outline portion of merits opposition brief |
| 11/17/2021 | 3.58 | Conduct research for, outline, and draft portion of merits opposition brief |
| 11/18/2021 | 2.60 | Draft portion of merits opposition brief |
| 11/19/2021 | 0.77 | Draft portion of merits opposition brief |
| 11/22/2021 | 0.25 | Draft portion of merits opposition brief |
| 11/29/2021 | 1.30 | Read and analyze Relators' merits brief |
| 11/29/2021 | 1.65 | Draft portion of merits opposition brief |
| 12/3/2021 | 0.78 | Conduct research for and draft portion of merits opposition brief |
| 12/7/2021 | 0.73 | Draft portion of merits opposition brief |
| 12/8/2021 | 0.50 | Draft portion of merits opposition brief |

| Effective Date | Hours | Description |
|---|---|---|
| 12/14/2021 | 1.82 | Review merits opposition brief |
| 12/15/2021 | 2.85 | Conduct research for and review merits opposition brief |
| 12/16/2021 | 1.70 | Conduct research for merits opposition brief |
| 12/17/2021 | 0.58 | Conduct research for merits opposition brief |
| 12/19/2021 | 1.48 | Edit merits opposition brief |
| 12/20/2021 | 4.07 | Edit, review, & finalize merits opposition brief |
| 12/21/2021 | 1.48 | Edit and prepare merits opposition brief for filing |
| **Total:** | **79.47** | |

7.       As the litigation arm of a 501(c)(3) non-profit, Everytown Law does not charge our clients attorney's fees. However, our clients in this case have authorized Everytown Law to seek and retain an award of attorney's fees and costs from the Court, to the extent such an award is authorized by law. The reasonable hourly rate for my time in this case is $300/hour. This rate is based on a number of factors, including my experience and expertise, the novelty and complexity of the issues involved (particularly with respect to PLCAA), and the market rate for attorneys in the Houston area with similar skills, experience, and expertise. In compiling this affidavit, I reviewed application for attorney's fees submitted by attorneys litigating in Texas with similar levels of experience from specialized public-interest organizations. My hourly rate is in line with or lower than the rates that I reviewed in the aforementioned applications.

8.       Thus, to date and excluding the time attending the motion hearing, I have performed work valued at $23,841 in attorney's fees. I have arrived at this amount by multiplying the time

worked by my hourly rate. In my opinion, this expense is a reasonable and necessary amount of attorney's fees in order to defend against the Tennessee Defendants' mandamus petition in the Texas Supreme Court given the legal complexity of the issues involved and time spent.

9. Additionally, I paid $255.88 on June 11, 2021, for *pro hac vice* admission to the Supreme Court of Texas.

10. I thus seek reimbursement for $24,096.88 (attorney's fees and *pro hac vice* admission costs).

11. Further affiant sayeth not.

Signed this $\underline{25}$ date of March, 2022.

_____

Andrew Nellis
Admission *Pro Hac Vice* Pending

SUBSCRIBED AND SWORN TO BEFORE ME on the $\underline{25}$ date of March, 2022, to certify which witness my hand and official seal.

_____

Notary Public for the District of Columbia

Robert Kotchenreuther II
Notary Public, District of Columbia
My Commission Expires 12-14-2026



**CAUSE NO. CV-0081158**

| | |
|---|---|
| ROSIE YANAS and CHRISTOPHER STONE, individually and as next friends of CHRISTOPHER JAKE STONE, | COUNTY COURT AT LAW |
| Plaintiffs, | |
| vs. | GALVESTON COUNTY, TEXAS |
| ANTONIOS PAGOURTZIS and ROSE MARIE KOSMETATOS | COURT NO. 3 |
| Defendants. | |

## ORDER

On this day, the Court considered Plaintiffs' Amended Application for Attorneys' Fees and

Costs, the Tennessee Defendants' response, and the applicable authorities and makes the following

findings:

1. Plaintiffs are the prevailing parties and are entitled to the recovery of their attorney's fees and costs pursuant to Tex. R. Civ. P. 91a.7.

2. Plaintiffs calculated their attorney's fees based on the lodestar method.

3. Plaintiffs' attorneys' fees and costs as set forth below are reasonable and necessary, and were incurred to respond to Defendants' Rule 91a Motion to Dismiss and corresponding mandamus petitions:

   a. Martinez & McGuire, PLLC in the amount of $10,575.00;

   b. The Law Firm of Alton C. Todd in the amount of $11,109.34;

   c. Everytown Law in the amount of $97,486.21;

   d. Tylka Law Center PC in the amount of $9,895.02;

   e. Apffel Legal, PLLC in the amount of $10,150.00;

   f. The Chandler Law Firm, LLP in the amount of $8,750.00; and

10

     g.  Law Offices of Martin J. Siegel P.C. in the amount of $4,200.00

4.  The Tennessee Defendants shall pay Plaintiffs the above attorneys' fees and costs within 30 days.

Signed this _____ 2ʳᵈ _____ day of ~~April~~ June, 2022.

HONORABLE JUDGE EWING

# Exhibit C



Egencia reference # ██████████

Alla Lefkowitz

# Chicago, IL

Wednesday, April 3, 2024 - Thursday, April 4, 2024

## ✈ Washington (DCA) to Chicago (ORD)

| Booked | Approved | Flight confirmation: ██████ |
|---|---|---|
| Itinerary ██████ | Ticket ██████ | Total distance 611mi / 984km |

✈ United Airlines (UA) 2187 394lb of $CO_2$                    2h 16m

| Departure | Arrival |
|---|---|
| Wed, Apr 03 at 10:00 am | Wed, Apr 03 at 11:16 am |
| Washington, DC, United States of America (DCA-Ronald Reagan Washington National) | Chicago, IL, United States of America (ORD-O'Hare Intl.) |

| Terminal | Seat | Class |
|---|---|---|
| 2 | 28B | Economy (V) |

**Baggage**
No information is available. Contact the airline for baggage information.

## 🏨 Sofitel Chicago Magnificent Mile

| Booked | Approved | Hotel confirmation: ██████ |
|---|---|---|
| Itinerary ██████ | | |

| Check-in | Check-out | Duration |
|---|---|---|
| Wed, April 03, 2024 | Thu, April 04, 2024 | 1 night |

| | Room | Phone/Fax |
|---|---|---|
| | 1 room , 1 adult | P: 1 312 324-4000 |
| | Superior Room, 1 King Bed (Floors 11-21) | F: 1 312 324-4026 |

**Address**
20 E Chestnut St, Chicago, IL, 60611, USA

**Amenities and rate details**
✓ No hotel loyalty points

## ✈ Chicago (ORD) to Washington (DCA)

| Booked | Approved | Flight confirmation: ██████ |
|---|---|---|
| Itinerary ██████ | Ticket ██████ | Total distance 611mi / 984km |

## Price details

### ✈ DCA - ORD (Round Trip)

| | |
|---|---|
| Base | $464.93 |
| Taxes | $65.07 |
| CC Fees | $0.00 |
| | $530.00 |
| | Paid |

### 🏨 Sofitel Chicago Magnificent Mile

| | |
|---|---|
| Wed, 4/3 | $207.20 |
| Taxes & Fees | $46.19 |
| | $253.39 |
| ✓ Paid by my company | |

This amount was charged to card ending in ██ on Mar 25, 2024

Mandatory Hotel Fee

### Additional fees

| | |
|---|---|
| Air booking fee | $6.00 |
| **Total** | **$789.39** |

✈ **United Airlines (UA) 2659** 394lb of $CO_2$                                      1h 55m

**Departure**                                          **Arrival**
Thu, Apr 04 at 3:05 pm                                 Thu, Apr 04 at 6:00 pm
Chicago, IL, United States of America (ORD-            Washington, DC, United States of America
O'Hare Intl.)                                          (DCA-Ronald Reagan Washington National)

**Terminal**          **Seat**                         **Class**
1                     31B                              Economy (V)

**Baggage**
No information is available. Contact the airline for baggage information.

---

## Traveler information

**Traveler**          **Phone number**      **Loyalty Program**      **TSA PreCheck**
Alla Lefkowitz        ███████████           ███████████              ██████

## Cost center information



## Important messages

### Hotel Booking Alert

Please be sure to pay attention to the different types of hotel rooms available, keep an eye out for the following:
Please review the below before selecting your hotel:

- Payment Through Egencia or Paid by My Company. If your booking is labeled "Payment Through Egencia" or "Paid by My Company," your hotel room charges will be charged directly to the corporate card on file in Egencia. You will only be responsible for incidentals (but see "Credit Card Authorization Form" below).

- Payment At Hotel. If your booking is labeled "Payment at Hotel," you will be responsible for presenting a credit card for room costs and incidentals at check in. If you do NOT want to use your personal credit card, select a "Payment Through Egencia" or "Paid by My Company" hotel option (see above), OR see "Credit Card Authorization Form" below.

- Credit Card Authorization Form. If you wish to avoid using a personal credit card for incidentals or "payment at hotel" bookings, contact the hotel prior to your stay to request a credit card authorization form or link. With your Director's permission, provide a corporate credit card number in advance through that form/link. Bring a copy of the credit card authorization form with you to check in.

- Travel & Expense Policy. Before booking a hotel, consult Everytown's Travel & Expense Policy to ensure rates are within policy.

### Hotel Bookings - Incidentals
**Once hotel is confirmed. If incidentals pose an issue, it is up to you to contact the hotel directly and request a credit card authorization form and/or link. If your director is ok, provide the credit card number to cover any incidentals. It's up to your director's discretion.**

## Rules and regulations

**United Airlines (UA) 2187**
### Washington (DCA) to Chicago (ORD)

- Changeable without penalty
- Non-refundable

**United Airlines (UA) 2659**
### Chicago (ORD) to Washington (DCA)

- Changeable without penalty
- Non-refundable

**Please note that the most restrictive set of rules applies to your entire itinerary.**

---

**Hotel**
### Sofitel Chicago Magnificent Mile

**Payment**
- Your credit card is charged the total cost above at time of purchase.
- If you require a receipt for your hotel stay, please refer to your Egencia online receipt or credit card statement for the room cost and ask the hotel directly for the additional fees and incidentals charged during your stay. Egencia is the merchant of record for the room cost only.

**Cancellation and Changes**
- Cancellations or changes made after 6:00 PM local hotel time on 04/01/2024 are subject to hotel fee equal to a 1 Night Room & Tax.

**Reservation has been confirmed by Sofitel Chicago Magnificent Mile**

If your plans change, you must cancel or change your hotel reservation in accordance with the hotel cancellation policy to avoid a no-show charge. Please refer to the cancellation and change policies listed below.

**General Policies**

**Mandatory Hotel-Imposed Fees:**
You'll be asked to pay the following charges at the property:
- Deposit: USD 125.00 per accommodation, per night
- Resort fee: USD 29.35 per accommodation, per night

The resort fee includes:
- Fitness center access
- In-room bottled water
- Internet access
- Newspaper
- Phone calls
- WiFi access (may be limited)

We have included all charges provided to us by the property.
- Some hotels request that we wait to submit guest names until 7 days prior to check in. In such a case, your hotel room is reserved, but your name is not yet on file with the hotel.
- Base rate is for 1 guest.
- Availability of accommodation in the same property for extra guests is not guaranteed.
- If you wish to book multiple rooms, you must use a different name for each room or the duplicate reservation MAY be cancelled by the hotel.

**Check-in instructions**
- Front desk staff will greet guests on arrival. For more details, please contact the property using the information on the booking confirmation.
- The price shown DOES NOT include any applicable hotel service fees, **charges for optional incidentals (such as minibar snacks or telephone calls)**
- Your room will be guaranteed for late arrival.

## Booking contacts

### Washington (DCA) to Chicago (ORD)

| Booked by | Main contact | Email | Mobile phone |
|---|---|---|---|
| Alla Lefkowitz | Alla Lefkowitz | alefkowitz@everytown.org | ▮▮▮▮▮▮ |

### Sofitel Chicago Magnificent Mile

| **Booked by** | **Main contact** | **Email** | **Mobile phone** |
|---|---|---|---|
| Alla Lefkowitz | Alla Lefkowitz | alefkowitz@everytown.org | ▇▇▇▇▇▇▇ |

### Need help with your reservation?

Contact the Egencia customer service via telephone or email:

📞 +1 (669) 288-7481

✉ teamagents@customercare.egencia.com

For faster service, mention itinerary # 212279364729.



Egencia reference # ▮▮▮▮▮▮▮

Carly Lagrotteria

# Chicago

Wednesday, April 3, 2024 - Saturday, April 6, 2024

## ✈ New York (LGA) to Chicago (ORD)

| Booked | Approved | Flight confirmation: ▮▮▮▮ |
|---|---|---|
| **Itinerary** ▮▮▮▮▮ | **Ticket** ▮▮▮▮▮ | **Total distance** 733mi / 1,179km |

✈ Delta Air Lines (DL) 5823 473lb of CO₂        2h 47m

**Departure**
Wed, Apr 03 at 9:50 am
New York, NY, United States of America (LGA-LaGuardia)

**Arrival**
Wed, Apr 03 at 11:37 am
Chicago, IL, United States of America (ORD-O'Hare Intl.)

| **Terminal** C | **Seat** 14A | **Class** Economy (L) |
|---|---|---|

**Baggage**
No information is available. Contact the airline for baggage information.

## 🏨 Sofitel Chicago Magnificent Mile

| Booked | Approved | Hotel confirmation: 2993YD2606 |
|---|---|---|
| **Itinerary** ▮▮▮▮▮ | | |

| **Check-in** Wed, April 03, 2024 | **Check-out** Thu, April 04, 2024 | **Duration** 1 night |
|---|---|---|
| | **Room** 1 room , 1 adult Superior Room, 1 King Bed (Floors 11-21) | **Phone/Fax** P: 1 312 324-4000 F: 1 312 324-4026 |

**Address**
20 E Chestnut St, Chicago, IL, 60611, USA

**Amenities and rate details**
✓ No hotel loyalty points

## ✈ Chicago (ORD) to New York (LGA)

| Booked | Approved | Flight confirmation: ▮▮▮▮ |
|---|---|---|
| **Itinerary** ▮▮▮▮▮ | **Ticket** ▮▮▮▮▮ | **Total distance** 733mi / 1,179km |

### Price details

✈ **LGA - ORD (Round Trip)**

| Base | $361.00 |
|---|---|
| Taxes | $57.28 |
| CC Fees | $0.00 |
| | $418.28 |
| | Paid |

🏨 **Sofitel Chicago Magnificent Mile**

| Wed, 4/3 | $207.20 |
|---|---|
| Taxes & Fees | $46.19 |
| | $253.39 |
| | ✓ Paid by my company |

This amount was charged to card ending in ▮▮▮ on Apr 3, 2024

Mandatory Hotel Fee

### Additional fees

| Air booking fee | $6.00 |
|---|---|
| **Total** | **$677.67** |

✈ **Delta Air Lines (DL) 5802** 473lb of CO₂       2h 11m

**Departure**
Sat, Apr 06 at 1:30 pm
Chicago, IL, United States of America (ORD-O'Hare Intl.)

**Arrival**
Sat, Apr 06 at 4:41 pm
New York, NY, United States of America (LGA-LaGuardia)

| Terminal | Seat | Class |
| --- | --- | --- |
| 5 | 14D | Economy (L) |

**Baggage**
No information is available. Contact the airline for baggage information.

---

## Traveler information

| Traveler | Phone number | Loyalty Program | TSA PreCheck |
| --- | --- | --- | --- |
| Carly Lagrotteria | ▮▮▮▮▮ | ▮▮▮▮▮ | ▮▮▮ |

## Cost center information



## Important messages

**Hotel Booking Alert**

Please be sure to pay attention to the different types of hotel rooms available, keep an eye out for the following:
Please review the below before selecting your hotel:

- Payment Through Egencia or Paid by My Company. If your booking is labeled "Payment Through Egencia" or "Paid by My Company," your hotel room charges will be charged directly to the corporate card on file in Egencia. You will only be responsible for incidentals (but see "Credit Card Authorization Form" below).

- Payment At Hotel. If your booking is labeled "Payment at Hotel," you will be responsible for presenting a credit card for room costs and incidentals at check in. If you do NOT want to use your personal credit card, select a "Payment Through Egencia" or "Paid by My Company" hotel option (see above), OR see "Credit Card Authorization Form" below.

- Credit Card Authorization Form. If you wish to avoid using a personal credit card for incidentals or "payment at hotel" bookings, contact the hotel prior to your stay to request a credit card authorization form or link. With your Director's permission, provide a corporate credit card number in advance through that form/link. Bring a copy of the credit card authorization form with you to check in.

- Travel & Expense Policy. Before booking a hotel, consult Everytown's Travel & Expense Policy to ensure rates are within policy.

**Hotel Bookings - Incidentals**
Once hotel is confirmed. If incidentals pose an issue, it is up to you to contact the hotel directly and request a credit card authorization form and/or link. If your director is ok, provide the credit card number to cover any incidentals. It's up to your director's discretion.

## Rules and regulations

**Delta Air Lines (DL) 5823**
## New York (LGA) to Chicago (ORD)

- Changeable without penalty
- Non-refundable

**Delta Air Lines (DL) 5802**
## Chicago (ORD) to New York (LGA)

- Changeable without penalty
- Non-refundable

**Please note that the most restrictive set of rules applies to your entire itinerary.**

---

Hotel
## Sofitel Chicago Magnificent Mile

### Payment
- Your credit card is charged the total cost at time of purchase.
- If you require a receipt for your hotel stay, please refer to your Egencia online receipt or credit card statement for the room cost and ask the hotel directly for the additional fees and incidentals charged during your stay. Egencia is the merchant of record for the room cost only.

### Cancellation and Changes
- <span style="color:red">Cancellations or changes made after 6:00 PM local hotel time on 04/01/2024 are subject to hotel fee equal to a 1 Night Room & Tax.</span>

**Reservation has been confirmed by Sofitel Chicago Magnificent Mile**

If your plans change, you must cancel or change your hotel reservation in accordance with the hotel cancellation policy to avoid a no-show charge. Please refer to the cancellation and change policies listed below.

### General Policies

**Mandatory Hotel-Imposed Fees:**
You'll be asked to pay the following charges at the property:
- Deposit: USD 125.00 per accommodation, per night
- Resort fee: USD 29.35 per accommodation, per night

The resort fee includes:
- Fitness center access
- In-room bottled water
- Internet access
- Newspaper
- Phone calls
- WiFi access (may be limited)

We have included all charges provided to us by the property.
- Some hotels request that we wait to submit guest names until 7 days prior to check in. In such a case, your hotel room is reserved, but your name is not yet on file with the hotel.
- Base rate is for 1 guest.
- Availability of accommodation in the same property for extra guests is not guaranteed.
- If you wish to book multiple rooms, you must use a different name for each room or the duplicate reservation MAY be cancelled by the hotel.

### Check-in instructions
- Front desk staff will greet guests on arrival. For more details, please contact the property using the information on the booking confirmation.

- The price shown DOES NOT include any applicable hotel service fees, **charges for optional incidentals (such as minibar snacks or telephone calls)**
- Your room will be guaranteed for late arrival.

---

## Booking contacts

### New York (LGA) to Chicago (ORD)

| Booked by | Main contact | Email | Mobile phone |
|---|---|---|---|
| Carly Lagrotteria | Carly Lagrotteria | clagrotteria@everytown.org | ███████ |

### Sofitel Chicago Magnificent Mile

| Booked by | Main contact | Email | Mobile phone |
|---|---|---|---|
| Carly Lagrotteria | Carly Lagrotteria | clagrotteria@everytown.org | ███████ |

### Need help with your reservation?

Contact the Egencia customer service via telephone or email:

📞 +1 (669) 288-7481

✉ teamagents@customercare.egencia.com

For faster service, mention itinerary # 212279844521.

 Gmail

**Alla Lefkowitz** < ▉▉▉▉▉▉▉▉▉▉ >

---

**[Personal] Your Wednesday morning trip with Uber**
2 messages

---

**Uber Receipts** <noreply@uber.com>                                    Wed, Apr 3, 2024 at 1:06 PM
To: ▉▉▉▉▉▉▉▉▉▉

Uber                                                                    Total $45.99
                                                                        April 3, 2024

# Thanks for riding, Alla

We hope you enjoyed your ride
this morning.



# Total                                      $45.99

> Surcharges mandated by the City of Chicago may make your trip more expensive.
> Learn more.

Trip fare                                                                      $32.55

Subtotal                                                                       $32.55

Booking Fee ❓                                                                  $5.44

Chicago Ground Transportation Surcharge ❓                                      $1.13

Chicago Congestion Surcharge ❓                                                 $1.75

| | |
|---|---|
| Chicago Special Venues Surcharge ❓ | $5.00 |
| Chicago Accessibility Surcharge ❓ | $0.10 |
| Chicago TNP Administrative Surcharge ❓ | $0.02 |

[Download PDF](#)

This is not a payment receipt. It is a trip summary to acknowledge the completion of the trip. You will receive a trip receipt when the payment is processed with payment information.

## You rode with Latrayle

4.91 ★ Rating          👤✓  Has passed a multi-step safety screen

Drivers are critical to communities right now. Say thanks with a tip.



Transportation Network Company: Uber Technologies, Inc.

When you ride with Uber, your trips are insured in case of a covered accident.

[Learn more ›](#)

UberX     18.06 miles | 40 min

■  11:25 AM
   10000 W O'Hare Ave, Des
   Plaines, IL 60666, US

↓  12:05 PM
   20 E Chestnut St, Downtown,
   IL 60611, US



Report lost item   ❯         Contact support   ❯              My trips   ❯

Forgot password                    Uber Technologies

Privacy                            1725 3rd Street,
                                   San Francisco,
Terms                              California
                                   94158

---

**Uber Receipts** <noreply@uber.com>                    Wed, Apr 3, 2024 at 11:17 PM
To: ███████████████

[Quoted text hidden]

[Quoted text hidden]

Payments



4/3/24 10:16 PM                                        $45.99

Switch Payment Method

Download PDF

## You rode with Latrayle

4.91 ★ Rating                    👤 Has passed a multi-step safety screen

Drivers are critical to communities right now. Say thanks with a tip.



Transportation Network Company: Uber Technologies, Inc.

When you ride with Uber, your trips are insured in case of a covered accident.

Learn more ›

UberX    **18.06 miles | 40 min**

■    11:25 AM
      10000 W O'Hare Ave, Des
      Plaines, IL 60666, US

▮    12:05 PM
      20 E Chestnut St, Downtown,
      IL 60611, US



Report lost item  ❯          Contact support  ❯          My trips  ❯

Forgot password                              Uber Technologies

Privacy                                       1725 3rd Street,
                                              San Francisco,
Terms                                         California
                                              94158

 Gmail

**Alla Lefkowitz <**  **>**

## [Personal] Your Thursday afternoon trip with Uber

**Uber Receipts** <noreply@uber.com>                                                    Fri, Apr 5, 2024 at 12:40 AM
To:

[Quoted text hidden]

[Quoted text hidden]

### Payments


4/4/24 11:40 PM                                                                         $45.92

Switch Payment Method

Download PDF

## You rode with Mohamed

5.00 ★ Rating                                   👥  Has passed a multi-step safety screen

Drivers are critical to communities right now. Say thanks with a tip.



Transportation Network Company: Uber Technologies, Inc.

When you ride with Uber, your trips are insured in case of a covered
accident.

Learn more ›

UberX      **17.84 miles | 38 min**

■      12:44 PM

20 E Chestnut St, Downtown,
IL 60611, US

1:22 PM
Terminal 1, O'Hare
International Airport (ORD),
Chicago, IL 60666, US



Report lost item    ❯         Contact support    ❯              My trips    ❯

Forgot password                    Uber Technologies

Privacy                            1725 3rd Street,
                                   San Francisco,
Terms                              California
                                   94158

# Uber

April 3, 2024

# Thanks for tipping, Carly

Here's your updated Wednesday morning ride receipt.

## Total                                                                 $51.51

| | |
|---|---|
| Trip fare | $33.34 |

| | |
|---|---|
| **Subtotal** | **$33.34** |
| Booking Fee | $6.59 |
| Chicago Ground Transportation Surcharge | $1.13 |
| Chicago Congestion Surcharge | $1.75 |
| Chicago Accessibility Surcharge | $0.10 |
| Chicago TNP Administrative Surcharge | $0.02 |
| Tip | $8.58 |

## Payments

| | |
|---|---|
| Everytown for Gun Safety<br>4/3/24 12:35 PM | $42.93 |
| Everytown for Gun Safety<br>4/4/24 11:23 AM | $8.58 |

██████████ for more information, including invoices (where available)

---

You rode with LOGAN

Transportation Network Company: Uber Technologies, Inc.

UberX     17.80 miles | 42 min

**11:52 AM** | 10255 W Zemke Blvd, Chicago, IL 60666, US

**12:34 PM** | 20 E Chestnut St, Downtown, IL 60611, US

Fare does not include fees that may be charged by your bank. Please contact your bank directly for inquiries.

EXPENSE INFO

5002 GENERAL PROGRAM

EXPENSE INFO

Uber to hotel (oral argument for Highland Park case)

# Uber

April 4, 2024

## Thanks for tipping, Carly

Here's your updated Thursday morning ride receipt.

## Total $17.91

| | |
|---|---|
| Trip fare | $7.88 |

| | |
|---|---|
| Subtotal | $7.88 |
| Booking Fee | $2.03 |
| Chicago Ground Transportation Surcharge | $1.13 |
| Chicago Congestion Surcharge | $1.75 |
| Chicago Accessibility Surcharge | $0.10 |
| Chicago TNP Administrative Surcharge | $0.02 |
| Tip | $5.00 |

## Payments

| | |
|---|---|
| Everytown for Gun Safety<br>4/4/24 11:38 AM | $12.91 |
| Everytown for Gun Safety<br>4/4/24 1:00 PM | $5.00 |

██████████ for more information, including invoices (where available)

You rode with ABDUL

Transportation Network Company: Uber Technologies, Inc.

UberX    1.52 miles | 8 min

**11:29 AM** | 219 S Dearborn St, Chicago, IL 60604-1701, US

**11:37 AM** | 20 E Chestnut St, Downtown, IL 60611, US

Fare does not include fees that may be charged by your bank. Please contact your bank directly for inquiries.

EXPENSE INFO

5002 GENERAL PROGRAM

EXPENSE INFO

Uber from court to hotel after aegment